# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JASON MICHAEL FRANKLIN,**

        **Petitioner,**

**v.**                                **Case No. 3:21-cv-806-MMH-SJH**

**SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, et al.,**

        **Respondents.**

_____

# ORDER

## I. Status

Petitioner Jason Michael Franklin, an inmate of the Florida penal system, initiated this action on August 17, 2021, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] He challenges a 2015 state court (Duval County, Florida) judgment of conviction for first-degree murder. Franklin raises eleven grounds for relief. See id. at 6−26. Respondents have submitted a memorandum opposing the Petition. See Response (Response; Doc. 7). They also submitted exhibits. See Response Exs. 1−37. Franklin filed a Reply. See Reply (Reply; Doc. 9). This action is ripe for review.

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On August 16, 2013, the state charged Franklin with one count of second-degree murder. <u>State v. Franklin</u>, No. 16-2013-CF-7224-AXXX-MA, (Fla. 4th Cir. Ct.) (Doc. 10).[2] A grand jury later returned an Indictment charging him with one count of first-degree murder. Response Ex. 2 at 1−2. Franklin proceeded to trial.

### A. Trial Proceedings & Direct Appeal

The parties presented the following evidence and testimony.

On August 1, 2013, Franklin confronted the victim−his wife's boss and paramour−at the victim's home. Franklin shot and killed the victim during that confrontation. It was not disputed at trial that Franklin killed the victim, but instead, Franklin disputed whether the murder was premeditated. He alleged at trial that he acted in self-defense.

A neighbor of the victim, Kelli McGreevy, testified that she heard a noise like firecrackers and flashes of light further down her street around 11:00 p.m. on August 1, 2013. Response Ex. 11 at 35−36. She saw the flashes, with one person standing and another person on the ground. <u>Id.</u> at 44. The person standing was holding a firearm and aiming it low. <u>Id.</u> at 45. Another neighbor,

---

[2] The Court takes judicial notice of Petitioner's state court dockets. <u>See</u> <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

Dustin Free, heard a loud noise that same evening. Id. at 53. After hearing the noise, he saw a white male walk to a parked car and drive off. Id. at 54−55. Free saw a body on the ground. Id. at 55. He noticed the body lying face down with severe trauma to the back of the head and alerted the victim's wife. Id. at 57−58. Free testified that he observed a baseball bat on the ground near the victim. Id. at 59.

Fire and Rescue determined the victim was dead from a gunshot wound to the head. Id. at 90. Detective Andrew Kipple testified that the victim's home had motion sensor lights around it. Id. at 100. He recovered six shell casings from the area. Id. at 102−04. He also located a live round and a baseball bat. Id. at 108−09, 129. Additionally, law enforcement recovered video recordings from security cameras the victim had installed at his home. Id. at 119. Detective Kipple later heard that police were investigating a second crime scene across town where Franklin was located. Id. at 126. Another detective retrieved a firearm from Franklin at the second scene. Id. at 129.

Christine Burnell, Franklin's former wife, testified that she and Franklin have two children together. Id. at 150−51. Leading up to the time of the incident, their marriage was falling apart. Id. at 151. The victim was her boss and they had begun a romantic relationship in January 2013. Id. at 151−52. Franklin learned of the affair and confronted her. Id. at 152−53. A second romantic encounter between Burnell and the victim took place in

February 2013. Id. at 154. Again, Franklin learned of the encounter and had another altercation with Burnell. Id. In February, shortly after he learned of the continued affair, Franklin and the victim agreed to meet and engage in a physical fight. Id. at 155. Afterwards, both displayed signs that they had been in a fight. Id. at 155−56. On a separate occasion, Franklin told Burnell that he had slashed the victim's tires. Id. at 156. Burnell testified that on the night of August 1, 2013, there were several other people present in the home she shared with Franklin when Franklin saw text messages from the victim on her phone that upset him. Id. at 156−59. He slapped the phone out of her hand. Id. at 159. Franklin also got into an altercation with Scott Franklin, his brother, who was present, and struck him. Id. at 159−60. Burnell called the police at about 9:23 p.m.; afterwards, she heard the front door close. Id. at 160−61. When Franklin returned to the house, he said he had killed the victim, and Burnell called the police again. Id. at 161−62. He did not say anything to her about a bat. Id. at 163.

Trial counsel made a proffer outside the presence of the jury of testimony Burnell would present. Id. at 164. Specifically, trial counsel sought to offer evidence about Franklin's troubled childhood. Id. at 164−65. The trial court permitted testimony that Franklin generally came from an unstable environment and had no relationship with his mother, since it was within Burnell's personal knowledge, as she had known Franklin since age 14. Id. at

4

168−71. Burnell testified that Franklin felt she and their children were everything to him, and when he learned she had cheated, he was heartbroken. Id. at 173−74. Burnell further testified that after Franklin and the victim fought in February 2013, he told Burnell that the victim instigated the fight and won. Id. at 184. The victim punched Franklin, resulting in a black eye. Id. at 185. Franklin told Burnell that he slashed the victim's tires because he wanted the victim's wife to know about the affair. Id. at 185. Burnell told Franklin she would try to work on their marriage, but she continued her affair with the victim. Id. at 186. When Franklin saw the text messages on August 1, 2013, he became very upset and angry. Id. at 187. Burnell did not see Franklin leave the house with a gun and never saw him with a gun in the house. Id. at 188. Burnell called the victim to tell him Franklin had seen the text messages. Id. at 188. The victim was angry. Id. at 189. Later that night when Franklin came home, Burnell heard him say he killed the victim, and he told her to call the police. Id. He had the gun with him then, and the police collected it as evidence. Id. at 190.

Franklin's ten-year-old daughter, V.F., was called to testify. Response Ex. 12 at 6. V.F. testified that she was in her bed on the night the incident occurred. Id. at 9. She recalled that her father came into the room, got out a duffle bag, and put it on the bed. Id. at 10. It was dark so she could not see, but she saw him grab something big and a bunch of smaller things and put them

in his pocket. <u>Id.</u> She then heard Franklin leave the house. <u>Id.</u> Later, he came into the room and said he had murdered someone and was going to jail. <u>Id.</u> at 11. She heard him talking to her mother and uncle, saying he shot him four times in the chest and two in the head to make sure he was dead. <u>Id.</u>

Detective Dennis Sullivan testified that he was the lead detective on this homicide investigation. <u>Id.</u> at 30. When he observed Franklin at the police station after his arrest, he did not see any injuries. <u>Id.</u> at 32. When Franklin was searched, two live rounds were found in a pocket. <u>Id.</u> at 33. Detective Sullivan further testified that the drive from Franklin's house to the victim's house was approximately twenty miles and took about thirty minutes. <u>Id.</u> at 36−37. Sullivan reviewed the surveillance video from the victim's home for the jury which showed an individual approach the victim's house close to 11 p.m. <u>Id.</u> at 38−39; 43−48. On cross-examination, Detective Sullivan admitted that he did not document Franklin's lack of injuries. <u>Id.</u> at 51. He also did not photograph Franklin or ask him to remove any clothing. <u>Id.</u>

As to the physical evidence, there was testimony that no useful DNA evidence was located. <u>Id.</u> at 68−71. The bat did not appear to have blood on it and there were no DNA results for it. <u>Id.</u> at 71. The firearms examiner determined the rounds found at the scene of the shooting were fired from the gun that was recovered from Franklin. <u>Id.</u> at 81.

The medical examiner testified there were four gunshot wounds on the victim: three passed through the body, one wound to the side, and another possible wound to the thigh. Id. at 96. There were gunshot wounds behind the victim's right ear and one to the back of his head. Id. at 99. Either shot to the head would have been fatal. Id. at 102. Another gunshot wound located on the victim's neck area also would have been fatal. Id. at 104−05. The cause of death was the gunshot wounds to the head and neck. Id. at 110. The medical examiner could neither say the relative positions of the shooter and victim nor which shot was fired first. Id. at 111.

At the close of the state's case, trial counsel moved for a judgment of acquittal on the issue of premeditation, and the trial court denied the motion. Id. at 114−17. The defense presented two witnesses. Detective Green testified that McGreevy did not previously tell him that she could see an arm aiming down, that she saw someone lying on the ground, or that the flashes she saw were low. Id. at 135. She just said she saw a flash from the direction where the victim lived. Id. He said she may have given other details to another officer. Id. at 137.

Franklin testified that he did not have a stable home life growing up, and had no relationship with his mother. Id. at 141. He met his wife in high school and had more stability in his life with her than he had experienced before. Id. at 141−42. He felt it was a happy marriage. Id. at 142. In January

2013, he learned his wife had been engaged in an extramarital affair. Id. 142−43. Despite agreeing to work on the relationship, Franklin later learned that his wife continued her affair with the victim. Id. at 145. Franklin went to the store where Burnell and the victim worked, and the victim said they could settle it after work. Id. at 146. Franklin testified the victim was cocky and wanted to fight. Id. Franklin testified that he returned to the store later, explaining that he did not think they would actually fight. Id. at 147. But, the two did get into a physical altercation. Id. Franklin testified that he ultimately pulled out a pocket-knife, and the victim backed off and left. Id.

When Franklin got home, he told his wife about the fight, and she agreed to work on the marriage. Id. at 149. She also told Franklin that the victim was married. Id. at 149−50. Franklin testified that he went by the victim's house−after finding his address in public records−and slashed his tires so that the victim would have to explain what happened to his wife. Id. at 150. However, Burnell later told him the victim did not tell his wife. Id. at 151. Franklin also went to the victim's supervisor at work to report the affair he was having with a subordinate employee in the hopes the employer would separate them in the workplace. Id. at 188.

Between February and August 2013, Franklin thought things had improved in his marriage to Burnell. Id. at 153. But on August 1, 2013, he found text messages on her phone and learned the affair was still ongoing. Id.

8

at 152–53, 155–56. He snapped and slapped his wife, and then his brother tackled him. Id. at 157. Franklin got his gun, loaded it, and went to confront the victim. Id. at 158, 160. Franklin testified he knew the victim was violent because of their prior physical altercation and he did not want another fight. Id. at 158–59. Franklin testified that he took the gun to protect himself because he did not think the victim would attack if he saw the gun. Id. at 159.

Franklin told his brother he was going to confront the victim. Id. at 161. He did not go straight across town, however, instead, he chose to drive around in an attempt to calm down. Id. Franklin testified that he stopped at the home of a relative, and while there, he called his own home and learned the police had been called because he had slapped his wife. Id. at 162. He hung up and went to victim's house. Id. at 163.

Franklin parked near the victim's house, grabbed his gun, and walked to the front door. Id. 163–64. No one came to the door, but he heard the victim say, "[b]ack here, Franklin." Id. at 165. Franklin testified that when he walked around to the side of the house, the victim jumped out from behind the AC unit and hit Franklin in the head with a metal baseball bat. Id. 165–66. Franklin testified that he was abused by a baseball bat when he was younger and sustained severe injuries as result. Id. at 166. Franklin stated that being struck by the bat caused him to panic and think the victim was trying to kill him with the bat. Id. at 166–67. Franklin stumbled back after being hit with

9

the bat, and pulled the trigger. <u>Id.</u> at 168. Franklin did not know initially where he had hit the victim, but then realized he had killed the victim. <u>Id.</u>

Franklin testified that he drove home still dazed from being hit by the bat. <u>Id.</u> at 168. He did not recall what he said but did recall saying goodbye to his daughter. <u>Id.</u> at 168–69. Franklin also testified that he felt shocked and was trying to save his family. <u>Id.</u> at 169–70. According to Franklin, he waited for the police to arrive and take the gun. <u>Id.</u> at 170. He told the detective that he got hit in the head with a baseball bat, and testified that he did not intend to kill the victim. <u>Id.</u> at 177–78.

On cross-examination, the state elicited testimony from Franklin that he slapped his wife in January, after learning of the affair. <u>Id.</u> at 179. And the state brought out testimony that on other occasions he grabbed her hair, broke a table, and stuck a gun in her face. <u>Id.</u> at 179–80. Franklin admitted to hitting his wife again on the night of the murder. <u>Id.</u> at 180. When Franklin went to the victim's house, he testified that they did not speak as the victim jumped out from behind the AC unit and hit him with the bat. <u>Id.</u> at 185. Franklin then began firing blindly, stating it happened quickly and reflexively. <u>Id.</u> at 186. Following the testimony of Franklin, the trial court denied defense motions for judgment of acquittal on the questions of premeditation and self-defense. <u>Id.</u> at 194–95.

10

The jury found Franklin guilty as charged in the Indictment. Response Ex. 15 at 1–2. The jury further found Franklin discharged and actually possessed a firearm causing death or great bodily harm during the commission of the offense. Id. On September 29, 2015, the trial court sentenced Franklin to life in prison with a twenty-five-year minimum mandatory pursuant to section 775.087(2)(a), Florida Statutes. Response Ex. 16 at 3, 5. On September 29, 2016, the First District Court of Appeal ("First DCA") per curiam affirmed without a written opinion Franklin's conviction and sentence, and on October 17, 2016, it issued the mandate. Response Ex. 20 at 1–2.

## B. Postconviction Proceedings

Franklin filed a pro se motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a) on April 18, 2017. Response Ex. 21 at 1–4. He alleged that his sentence was illegal because the trial court imposed a twenty-five-year minimum mandatory sentence pursuant to the 10-20-life statute and, as a result, had no statutory authority for imposing the life sentence. Id. The trial court summarily denied relief on May 23, 2017, finding Franklin's sentence permissible under the relevant statutory authority. Response Ex. 22 at 1–2. The First DCA per curiam affirmed the trial court's denial without a written opinion, and on December 12, 2017, it issued the mandate. Response Ex. 23 at 1–2.

11

On January 22, 2018, Franklin filed a petition for a writ of habeas corpus with the First DCA, alleging his appellate counsel was ineffective for failing to raise on direct appeal one issue of fundamental error related to the jury instructions. Response Ex. 24 at 2−13. The First DCA denied Franklin's petition with a written opinion on June 13, 2018. Response Ex. 25 at 1−2.

Franklin filed a pro se initial motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on August 22, 2018, raising twelve grounds. Franklin, No. 16-2013-CF-7224-AXXX-MA, (Doc. 428). On January 14, 2019, the trial court dismissed Franklin's Rule 3.850 motion for failing to comply with procedural requirements and granted him leave to amend. Id. at Doc. 444. On March 4, 2019, Franklin filed a timely Amended Rule 3.850 Motion raising sixteen grounds for relief. Response Ex. 26 at 1−43. Specifically, Franklin alleged: (1) ineffective assistance of trial counsel for failing to obtain arrest photos; (2) ineffective assistance of trial counsel for failing to call a witness; (3) a Brady[3] violation; (4) trial court error related to evaluating trial counsel's performance; (5) ineffective assistance of trial counsel for failing to depose a witness; (6) ineffective assistance of trial counsel for failing to challenge witness testimony; (7) ineffective assistance of trial counsel for failing to effectively cross-examine detectives; (8) ineffective assistance of trial

_____

[3] Brady v. Maryland, 373 U.S. 83 (1963).

counsel for failing to ask for a jury instruction; (9) ineffective assistance of trial counsel for failing to object to the trial court's failure to read certain jury instructions; (10) ineffective assistance of trial counsel for failing to familiarize herself with relevant law; (11) ineffective assistance of trial counsel for removing a relevant prong of the self-defense instructions; (12) ineffective assistance of trial counsel for failing to impeach a state witness; (13) ineffective assistance of trial counsel for failing to provide a defense at trial; (14) ineffective assistance of trial counsel for failing to investigate exculpatory text messages; (15) illegal sentence; and (16) cumulative error. Id.

On July 8, 2019, the trial court directed the state to respond to grounds three, eight, and nine of Franklin's Amended Rule 3.850 Motion. Franklin, No. 16-2013-CF-7224-AXXX-MA, (Doc. 461). The state filed its response on October 15, 2019. Response Ex. 28 at 1−39. The trial court summarily denied relief on all grounds. Response Ex. 31 at 1−27. The First DCA per curiam affirmed the trial court's denial without a written opinion, and on June 11, 2021, it issued the mandate. Response Ex. 37 at 1−2, 19.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318−19 (11th Cir. 2016). "It follows that if the record refutes the 13applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions

as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as

persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97−98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal

> courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102−03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404

18

> U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[5] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>,

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[5] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–
> 1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558
> U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417
> (2009). The doctrine barring procedurally defaulted
> claims from being heard is not without exceptions. A
> prisoner may obtain federal review of a defaulted
> claim by showing cause for the default and prejudice
> from a violation of federal law. See Coleman, 501 U.S.,
> at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be

excused under certain circumstances. Notwithstanding that a claim has been

procedurally defaulted, a federal court may still consider the claim if a state

habeas petitioner can show either (1) cause for and actual prejudice from the

default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d

1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that prevented
> [him] from raising the claim and which cannot be
> fairly attributable to his own conduct." McCoy v.
> Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier,
> 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

21

## C. Ineffective Assistance of Trial Counsel and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not

23

> disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under <u>Strickland</u>. <u>See</u> <u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020); <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has instructed:

> In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." <u>Id.</u> at 1130-31.[7] Rather, an effective attorney will weed out weaker arguments, even though they may have merit. <u>See</u> <u>id.</u> at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. <u>See</u> <u>id.</u> at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." <u>Id.</u>

---

[7] <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991).

Philmore, 575 F.3d at 1264. Thus, appellate counsel's performance is prejudicial if the omitted claim would have a reasonable probability of success on appeal. Id. at 1265.

## VI. Findings of Fact and Conclusions of Law

The Court addresses each of Franklin's eleven grounds for relief−each with various subclaims−below. To the extent Franklin raises new arguments for the first time in his Reply, those arguments are not properly before the Court. And thus, the Court does not consider those arguments here. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (citation omitted).

## A. Ground One

As Ground One, Franklin alleges rulings made by the trial court impacted his ability to receive a fair trial. Petition at 6. He identifies three instances, arguing that the trial court erred by: (1) allowing the admission of bad character evidence; (2) prohibiting Franklin from testifying about certain events; and (3) denying his motions for judgment of acquittal. Id. at 6−7.

### (1) Admission of Character Evidence

Franklin argues he was denied a fair trial because the trial court allowed the admission of certain bad character evidence involving incidents that occurred six months prior to the charged offense. Petition at 6. The state sought

to include evidence that: (1) Franklin slapped Burnell upon learning of the affair with the victim;  (2) on a second occasion, he grabbed Burnell's hair, punched a table, and held a gun to her face; and (3) Franklin approached the victim, engaged in a mutual fight, and slashed his tires. Id. Franklin contends the evidence of violence towards his wife did not shed light on the issue of premeditation, and these encounters between him and the victim occurred months prior to the murder. Id. He also argues the evidence was not relevant to the issue of premeditation and served only to inflame the emotions of the jury. Id.

　　This claim is unexhausted because Franklin did not present the federal nature of this claim to the state court. On direct appeal, with the help of appellate counsel, Franklin argued that the trial court erred under Florida law in admitting evidence of previous bad acts that were not relevant to the issue of premeditation; specifically, acts of violence toward Burnell, who was not the victim of an alleged crime in the case, and the slashing of the victim's tires. Response Ex. 17 at 19−25. The state filed an answer in opposition, and Franklin filed a reply brief. Response Exs. 18; 19. The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 20. When briefing this issue, however, Franklin did not state or suggest that he was raising a federal claim about due process or any other federal constitutional guarantee. Response Ex. 17 at 19−25. As such, this claim in

Ground One is unexhausted and procedurally defaulted, and Franklin has shown neither cause and prejudice nor a miscarriage of justice to overcome this procedural bar.

To the extent Franklin asserts that the trial court erred under Florida law when it admitted certain evidence of prior bad acts, the claim presents an issue purely of state law not cognizable on federal habeas review. As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1995) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections). Thus, insofar as Franklin alleges that the trial court's evidentiary ruling violated Florida law, this claim provides no basis for federal habeas relief.

But to the extent this claim is properly presented to the Court, the state court's adjudication is entitled to deference. And in applying such deference, the Court finds the state court's evidentiary ruling did not "'so infuse[ ] the trial with unfairness as to deny due process of law.'" Smith v. Jarriel, 429 F.

App'x 936, 937 (11th Cir. 2011) (quoting <u>Felker v. Turpin</u>, 83 F.3d 1303, 1311−12 (11th Cir. 1996)).[8] Accordingly, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. This subclaim is due to be denied.

### (2) *Franklin's Testimony*

Next, Franklin alleges the trial court denied him due process by ruling that he could not inform the jury about his encounter with the detectives on the night the incident occurred. Petition at 6. Specifically, Franklin wanted to testify that he told detectives that the victim hit him with a baseball bat. <u>Id.</u> Franklin maintains that because he could not present this testimony, he was precluded from a full presentation of his defense to defend against the state's accusations. <u>Id.</u>

On direct appeal, with the assistance of appellate counsel, Franklin argued that the trial court erred in ruling that he could not testify as to what

---

[8] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

he told the detective about the circumstance of the shooting, denying him a right to fair trial. Response Ex. 17 at 26–30. The state filed an answer in opposition, and Franklin filed a reply brief. Response Exs. 18; 19. The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 20. To the extent Franklin asserts that the trial court erred under Florida law when it refused to allow certain testimony, his claim again presents an issue purely of state law not cognizable on federal habeas review. See Estelle, 502 U.S. at 67–68; Osborne, 720 F.2d at 1238 ("As a general rule, a federal court in a habeas corpus case will not review the trial court's actions in the admission of evidence.") (citation omitted).

Nevertheless, assuming arguendo Franklin raises a federally cognizable claim, the Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Doing so, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. As such, Franklin is not entitled to federal habeas relief on this subclaim of Ground One.

*(3) Judgment of Acquittal*

As for this subclaim of Ground One, Franklin alleges the trial court's denial of his motions for judgment of acquittal violated his due process and equal protection rights. Petition at 6. He maintains the state, by relying on circumstantial evidence of premeditation, did not meet its burden of presenting evidence to refute Franklin's reasonable theory of innocence. Id. at 7. According to Franklin, the state did not prove premeditation or disprove that he acted in self-defense. Id.

Franklin, through appellate counsel, raised a similar claim on direct appeal. Response Ex. 17 at 31−38. In arguing the motions for judgment of acquittal to the trial court, defense counsel did not reference federal law and made no mention of any federal constitutional guarantee. Response Ex. 12 at 114−15, 193−94. Likewise, in the appellate briefs, neither side cited any federal cases or constitutional provisions. Response Exs. 17 at 31−39; 18 at 40−48. As such, Franklin did not alert the state courts to the federal nature of the claim he now asserts. This claim, therefore, was not fairly presented as a federal claim and is unexhausted. See Baldwin, 541 U.S. at 32 (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so"); Preston v. Sec'y, Fla.

Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim.").

Because Franklin never raised this claim in the trial court or on direct appeal, he cannot return to state court to properly exhaust this claim through a second direct appeal. See Hall v. State, 823 So. 2d 757, 763 (Fla. 2002) (stating issue not raised in an initial brief is procedurally barred) abrogation on other grounds by State v. Johnson, 122 So. 3d 856, 862 (Fla. 2013). Thus, the claim is unexhausted and procedurally barred in federal court. Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."). Franklin has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust.

Nevertheless, even assuming Franklin did exhaust the federal nature of this claim, it still lacks merit because the state court's adjudication is entitled to deference. The state presented sufficient evidence, viewed in the light most favorable to the prosecution, for the jury to conclude Franklin committed first-degree murder. Under § 2254, habeas relief on a claim of insufficient evidence is appropriate only "if it is found that upon the record evidence adduced at trial

no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979). In reviewing the denial of a judgment of acquittal motion, "[t]he question is whether reasonable minds <u>could</u> have found guilt beyond a reasonable doubt, not whether reasonable minds <u>must</u> have found guilt beyond a reasonable doubt." <u>United States v. Bacon</u>, 598 F.3d 772, 775 (11th Cir. 2010) (quoting <u>United States v. Ellisor</u>, 522 F.3d 1255, 1271 (11th Cir. 2008)) (emphasis in original). Notably, in moving for a judgment of acquittal, the movant admits every conclusion favorable to the adverse party that a jury might fairly infer from the evidence. <u>Lynch v. State</u>, 293 So. 2d 44, 45 (Fla. 1974). Accordingly,

> [i]t is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. . . . The jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial, and the court must accept all reasonable inferences and credibility determinations made by the jury.

<u>United States v. Garcia</u>, 447 F.3d 1327, 1334 (11th Cir. 2006) (internal quotations and citations omitted). Indeed, the Eleventh Circuit has instructed, we are "bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant." <u>United States v. Peters</u>, 403 F.3d 1263, 1268 (11th Cir. 2005).

Here, the state presented sufficient evidence of premeditation. For months before the murder, Franklin was upset about the affair between his wife and the victim. Franklin confronted the victim, physically fought with the victim, and slashed the victim's tires, all before committing the murder. Response Ex. 11 at 154−56, 174, 185. Just prior to the murder, Franklin armed himself and drove nearly twenty miles with a loaded firearm to confront the victim. Response Ex. 12 at 37, 180. Not only did Franklin shoot the victim through the front of the neck, he also shot him twice in the back of the head. Response Exs. 11 at 111, 113; 12 at 83, 96−97, 99, 191. McGreevy, a neighbor who witnessed the murder, testified that Franklin stood over the victim who was lying on the ground, and fired his gun downward. Response Ex. 11 at 39, 44.

As to Franklin's claim of self-defense, the victim suffered multiple gunshot wounds, including wounds that entered through the back of his head and exited through his face. Response Exs. 11 at 111, 113; 12 at 83, 96−97, 99, 100, 191. Franklin suffered no visible wounds from a baseball bat and admitted that he shot the victim. Response Ex. 12 at 32, 168.

Based on the foregoing, the trial court did not err in denying Franklin's judgment of acquittal motions and allowing the first-degree murder charge to go to the jury. Franklin has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law

or that it was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2). Accordingly, relief on this subclaim in Ground One is due to be denied.

## B. Ground Two

As Ground Two, Franklin maintains the trial court erred in denying his Rule 3.800(a) motion. Petition at 8. Franklin asserts that the trial court imposed an additional term of years above the statutory mandatory minimum of twenty-five years under the 10-20-life statute. Id. He alleges this additional term of years is impermissible because once a mandatory minimum sentence is imposed under the 10-20-life statute, it prevails over the general sentencing maximum. Id. In essence, Franklin argues it was illegal to impose both a life sentence and a twenty-five-year minimum mandatory on Count One. Id.

On April 18, 2017, Franklin filed a Rule 3.800(a) motion raising this claim. Response. Ex. 21 at 1–4. The trial court denied the claim, stating:

> Defendant was convicted of first degree murder, a capital felony, contrary to section 782.04(1)(a), Florida Statutes. In that the State did not seek the death penalty, only one lawful sentence could be imposed: Life without the possibility of parole. Section 775.082(1)(a), Florida Statutes. Further, the jury made a specific finding that in committing the offense, Defendant discharged and actually possessed a firearm causing death or great bodily harm. This finding by the jury required the Court to impose a 25-year mandatory minimum sentence pursuant to section 775.087(2)(a)(3), Florida Statutes. The sentence the Court imposed was not illegal; it was the only legal sentence the Court could impose and, therefore, Defendant is not entitled to relief.

34

Response Ex. 22 at 1−2. The First DCA per curiam affirmed without opinion the trial court's denial. Response Ex. 23 at 1−2.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

That said, even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit. The Florida Supreme Court has determined that the "25 to life" provision in the 10–20–Life statute provides trial courts with discretion to impose a mandatory minimum sentence between twenty-five years to life. Mendenhall v. State, 48 So. 3d 740, 750 (Fla. 2010). This is true even if that mandatory minimum exceeds the statutory maximum for the crime. Id. The Florida Supreme Court has also determined that the same "25 to life" provision does not provide trial courts with discretion to impose a sentence greater than the mandatory minimum selected by the trial court. Hatten v. State, 203 So. 3d 142, 146 (Fla. 2016). To illustrate, the court in Hatten explained:

> [T]he trial court could have imposed the total 40–year sentence as a mandatory minimum sentence pursuant to the 10–20–Life statute, even though it would exceed the 30–year maximum under the general sentencing statute, pursuant to Mendenhall. However, the sentence imposed was the following: "For a term of 40 years (25 yr. min. mand.)." There is no statutory authority for the additional term of years beyond the selected mandatory minimum (of 25 years) under the 10–20–Life statute.

Id. at 145–46 (Fla. 2016). To do that, the trial court must have additional statutory authority. Id. at 146.

Here, the trial court did not run afoul of Mendenhall or Hatten. The trial court imposed a life sentence, which was the only available sentence for capital first-degree murder, along with a minimum mandatory for the use of a firearm. This is not an illegal sentence as the trial court had the statutory authority to impose the life sentence in addition to the minimum mandatory term of imprisonment. Accordingly, relief on the claim raised in Ground Two is due to be denied.

### C. Ground Three

As Ground Three, Franklin maintains: "the per curiam opinion affirms the appellate court neglected its ministerial quasi-judicial function, which denied available state corrective process." Petition at 9. To support this claim, he alleges: (1) appellate counsel failed to recognize fundamental error on the face of the record; and (2) the First DCA's per curiam affirmance on direct appeal does not establish a determination on the merits. Id. at 9−10.

36

*(1)Appellate Counsel*

Franklin alleges appellate counsel was ineffective for failing to recognize fundamental error in the record and raise that claim on direct appeal. Id. at 9. Specifically, Franklin alleges the jury instructions as given placed the burden on him to prove he was not the aggressor and relieved the state of its burden. Id. According to Franklin, the state requested a jury instruction for the language contained in section 776.041, Florida Statutes, which states that if you are the aggressor, you have a duty to retreat. Id. at 10. And the defense asked for the instruction related to section 776.012, Florida Statutes, which states that you do not have a duty to retreat if you are attacked at a location in which you are legally present. Id. Franklin argues that appellate counsel should have raised on direct appeal a claim of ineffective assistance of trial counsel for failing to alert the trial court about the improper burden shifting in the jury instructions. Id.

Franklin raised a substantially similar claim in his petition for writ of habeas corpus filed with the First DCA. Response Ex. 24 at 2−12. The First DCA denied the claim on the merits. Response Ex. 25 at 1. As such, the First DCA's adjudication of this claim is entitled to AEDPA deference. Upon a thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Franklin's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an

37

unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Accordingly, the relief sought in this subclaim of Ground Three is due to be denied.[9]

### (2) Per Curiam Affirmance

Franklin maintains that because the First DCA per curiam affirmed his judgment and sentence without a written opinion on direct appeal, the decision neither establishes a determination on the merits nor whether the trial court departed from the essential requirements of law. Petition at 10. By doing so, Franklin asserts that the First DCA has exhibited deliberate indifference to its judicial function which rises to the level of a "federal violation." Id.

Contrary to Franklin's assertions, "a per curiam affirmance without opinion is not an indication that the case was not considered on the merits." Bryant v. Sec'y, Fla. Dep't of Corr., No. 1:15-cv-158-WTH-GRJ, 2018 WL 3245015, at *4 (N.D. Fla. May 7, 2018), report and recommendation adopted sub nom. 2018 WL 3244088 (N.D. Fla. July 3, 2018). Florida courts have recognized this principle. Crittenden v. State, 67 So. 3d 1184, 1185 n. 1 (Fla. 5th DCA 2011) ("We reiterate that a per curiam affirmance without opinion is not an indication that the case was not considered on the merits. Each and every appeal receives the same degree of attention."); Elliott v. Elliott, 648 So.

_____

[9] The Court further addresses the jury instructions in Ground Eleven.

2d 137, 139 (Fla. 4th DCA 1994) ("Perhaps the court needs simply to restate the fundamental proposition that each and every appeal receives the same degree of attention and that a per curiam affirmance without opinion is not an indication of any kind of lesser treatment."). Accordingly, the relief sought on this subclaim in Ground Three is due to be denied.

### D. Ground Four

As Ground Four, Franklin alleges the trial court erred in denying the claim of cumulative error in his amended Rule 3.850 motion. Petition at 11.

Franklin raised a claim of cumulative error as ground sixteen in his amended Rule 3.850 motion. Response Ex. 26 at 38−40. The trial court denied the claim, stating:

> Defendant asserts the aggregate effect of the above errors amounts to cumulative error. "Claims of cumulative error do not warrant relief where each individual claim of error is either 'meritless, procedurally barred, or [does] not meet the Strickland standard for ineffective assistance of counsel.'" Schoenwetter v. State, 46 So. 3d 535, 562 (Fla. 2010) (quoting Israel v. State, 985 So. 2d 510. 520 (Fla 2008)). Having found that all of Defendant's previous claims were either meritless, procedurally barred, or did not meet the Strickland standard of ineffective assistance of counsel, Defendant is not entitled to relief.

Response Ex. 31 at 26. The First DCA per curiam affirmed without opinion the trial court's order. Response Ex. 37 at 1−2, 19. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Indeed, the Eleventh Circuit has explained that where there is no individual merit to individual claims, the argument that cumulative error requires reversal is baseless. United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005); see also United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984). Here, because the Court has determined that none of Franklin's individual claims of error or prejudice have merit,[10] Franklin's cumulative error claim cannot stand. See Taylor, 417 F.3d at 1182 ("There being no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit.").

On this record, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

---

[10]  The Court addresses each of the claims throughout this order.

presented in the state court proceedings. The relief sought in Ground Four is due to be denied.

### E. Ground Five

As Ground Five, Franklin alleges the trial court erred in denying grounds one, four, and thirteen of his amended Rule 3.850 motion. Petition at 14–17.

#### (1) Ground One of Rule 3.850 Motion

Franklin alleges counsel was ineffective for failing to introduce his arrest and booking photographs at trial. Petition at 16. He maintains the photographs were taken shortly after his arrest and showed defensive wounds. Id. By failing to introduce these photographs, Franklin argues trial counsel deprived him of a fair opportunity to defend against the charges and challenge the credibility of state witnesses that claimed he had no injuries. Id.

Franklin raised a substantially similar claim in ground one of his amended Rule 3.850 motion. Response Ex. 26 at 5–7. The trial court denied the claim, stating:

> At trial, the detective who spoke to Defendant that night testified he saw no injuries to Defendant, or he would have notified the medical staff and had photographs taken. Moreover, no blood or DNA was found on the metal baseball bat Defendant alleges the victim used to strike him. Defendant agreed the police took no pictures of him, but stated that he did have injuries of lumps on his head from where the victim allegedly hit him with the bat and that he told police about those injuries.

Even if his booking photographs showed lumps on Defendant's head, this Court finds no reasonable probability the result of the proceeding would have been different. This is particularly true based on the evidence of premeditation presented by the State. The State presented evidence that Defendant had tried to stop the affair between the victim and Defendant's wife before, by confronting and fighting the victim, slashing the victim's tires, and reporting the affair to a supervisor at the victim and Defendant's wife's workplace, but those methods failed. Additionally, when Defendant found out the affair was ongoing, he loaded his gun, drove around town for awhile while planning to go to the victim's home, and then shot him. There was evidence Defendant shot the victim in the back of the head and shot him while he stood over the victim lying on the ground, including Defendant's own admission that he shot the victim but did not remember how. Accordingly, Defendant's first ground is without merit.

Response Ex. 31 at 2−3 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1−2, 19.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this subclaim.

*(2) Ground Four of Rule 3.850 Motion*

Franklin alleges his trial counsel was ineffective for failing to develop a working relationship with him and allow him to participate in his case. Petition at 15. He alleges he filed letters, motions to counsel, and informed the trial court of issues with his counsel. Id. Franklin contends counsel failed to pursue certain evidence, including 911 calls, which deprived him of an opportunity to hear all evidence. Id. at 16. And on the occasions she did visit him, trial counsel allegedly misinformed Franklin about the "heat of passion" and self-defense defenses. Id. Franklin also maintains counsel's failure to visit him in the jail left him uninformed of the facts and hindered his ability to prepare for his trial. Id.

Franklin raised a substantially similar claim in ground four of his amended Rule 3.850 motion. Response Ex. 26 at 12−14. The trial court denied the claim, stating:

> In this ground, Defendant avers the trial court erred in failing to look into the facts alleged by Defendant during his Nelson hearings. "[A]llegations of trial court error are not cognizable by motion under rule 3.850." Grimsley v. Jones, 215 So. 3d 353, 354 (Fla. 2016) (citations omitted). Therefore, Defendant is not entitled to relief on this ground to the extent this ground raises such a claim.
>
> However, within this ground, Defendant also alleges counsel was ineffective for only visiting Defendant twice. Defendant states counsel failed to obtain 911 calls, which would have shown the victim to be the aggressor. Moreover, he vaguely states that counsel did not put forth investigation into the evidence presented

43

and available evidence because she had different views than Defendant.

Even assuming arguendo that counsel did only visit Defendant twice, he does not allege sufficient prejudice to warrant relief on this basis as he does not explain how meeting with him more often would have changed the outcome of the proceeding. Moreover, Defendant's vague assertions regarding counsel not putting forth investigation into evidence and having a conflict with Defendant are also insufficiently pled in that he does not specifically identify what investigation counsel did not conduct or how that investigation or getting along with Defendant would have changed the outcome of the proceeding. This Court granted Defendant leave to amend this ground previously and is not required to do so again. See Fla. R. Crim. P. 3.850(f)(3); Spera v. State, 971 So. 2d 754, 761 (Fla. 2007) (holding "the trial court abuses its discretion when it fails to allow the defendant at least one opportunity to amend the motion.") (emphasis added).

As for the 911 calls, this Court also finds Defendant's allegations to be insufficiently pled. While Defendant states the calls would have shown the victim to be the aggressor, Defendant does not explain who made these alleged calls and how they would have shown the victim to be the aggressor. Moreover, this Court finds that the record refutes Defendant's allegations that counsel failed to procure such records. While Defendant states counsel simply did not want the call, she stated she had gone over all the 911 calls turned over to her by the State and although she was not sure whether the 911 call Defendant was referring to even existed, she did not know if she would want it because she thought it may hurt Defendant's case. After that, the State addressed the trial court to ensure that counsel had received all the 911 calls associated with the case. Counsel also stated she had someone from her office review with Defendant the entirety of every disk counsel possessed. Accordingly, this Court finds Defendant is not entitled to relief on this ground.

Response Ex. 31 at 8–9 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1–2, 19.

44

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this subclaim.

That said, even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit. Franklin makes a conclusory statement that because trial counsel did not meet with him on more occasions, he was left uninformed about the facts of the case and that it detrimentally impacted his case. But Franklin fails to identify what further information he could have told counsel, and the trial record shows counsel was well informed about Franklin's version of events, as detailed by her presentation during trial. Further, trial counsel stated that she reviewed all of the discovery provided by the state with Franklin. Franklin, No. 16-2013-CF-7224-AXXX-MA, (Doc. 399 at 7–8). Of note, the state obtained 911 calls and provided them to the defense as part of its discovery package. Franklin, No. 16-2013-CF-7224-AXXX-MA, (Doc. 400 at 27). And while trial counsel admitted there may be an additional 911 call not included, she explained that

she was hesitant to obtain it because she thought it might be detrimental to the defense. Id.

Also, trial counsel presented a self-defense theory at trial. And as for a "heat of passion" defense, the Court finds the trial evidence, including Franklin's own testimony, would not have supported such a defense. Franklin testified that he did not take a direct route to the victim's home because he was upset. Response Ex. 12 at 161−63. Detective Sullivan estimated a direct route would have taken thirty minutes. Id. at 36−37. Given Franklin's testimony that he did not go directly there, it is clear it would have taken him longer if he "went around town" and made stops on the way to the victim's house. Id. at 161−63. Under either scenario, and based on Franklin's own statements, a reasonable person would have sufficient time to "cool off," defeating any possibility of presenting a "heat of passion" defense. See Fla. Std. Jury Instr. (Crim.) 7.2. To the extent Franklin maintains counsel did not inform him of this defense, this Court finds no error as such a defense was inconsistent with the evidence.

In sum, the Court finds there is no threshold number of meetings with a client that make a trial counsel effective. Trial counsel routinely communicated with Franklin, reviewed discovery, took depositions, and presented a defense theory at trial that fit the evidence presented. The Court cannot find trial counsel acted ineffectively for failing to meet with Franklin on more occasions,

request certain evidence that may be detrimental to his case, or pursue a defense that was not supported by the evidence. See, e.g., Williamson v. Moore, 221 F.3d 1177, 1181 (11th Cir. 2000). For these reasons, relief on this subclaim is due to be denied.

### (3) Ground Thirteen of Rule 3.850 Motion

As this subclaim, Franklin alleges trial counsel raised a theory of self-defense at trial but failed to prepare a defense that would negate the state's evidence of premeditation. Petition at 15. He maintains the affair "devastated his rational thinking" and led him to take irrational actions. Id. Franklin asserts the proper defense should have been "heat of passion" and self-defense. Id.

Franklin raised a substantially similar claim in ground thirteen of his amended Rule 3.850 motion. Response Ex. 26 at 34–35. The trial court denied the claim, stating:

> The heat of passion defense may negate the intent element of premeditation for first degree murder or the depraved heart element of second degree murder. Wheeler v. State, 4 So. 3d 599, 604 (Fla. 2009); Palmore v. State, 838 So. 2d 1222, 1224 (Fla. 1st DCA 2003). For the jury to find in favor of a heat of passion defense, they must find:
>
> a. there must have been a sudden event that would have suspended the exercise of judgment in an ordinary reasonable person; and
> b. a reasonable person would have lost normal self-control and would have been driven by a blind and unreasoning fury; and

c. there was not a reasonable amount of time for a reasonable person to cool off; and

d. a reasonable person would not have cooled off before committing the act that caused death; and

e. Defendant was, in fact, so provoked and did not cool off before he committed the act that caused the death of the victim.

Fla. Std. Jury Instr. (Crim.) 7.2.

At trial, the State presented evidence that on the day of the shooting, Defendant found out his wife was continuing to have an affair that he believed had ended six months before. After hitting his wife, Defendant got into an altercation with his brother, then grabbed his gun, loaded it, and headed for the victim's house. Detective Dennis Sullivan stated that he measured the distance between Defendant's residence and the victim's residence and that it was approximately twenty miles and would take approximately thirty minutes to drive. However, Defendant testified that he did not take a direct route to the victim's house because he "went around town to try to calm down before [he] went to [the victim's] house, because [he] didn't want to go to [the victim's] house with rage in [himself] or anything, because [he] knew [he] wasn't mentally stable at that point." Defendant stated he not only drove around town, but also stopped at a family member's house to try to call his daughter, but that he was not allowed to talk to her. Defendant testified he then went to the victim's house, but "drove the long way because [he] was upset."

Based on this evidence, this Court finds no reasonable probability the result of the proceeding would have been different, even had counsel advised him the heat of passion defense was available and presented that defense. Initially, this Court notes that it would be difficult to argue this was a "sudden event that would have suspended the exercise of judgment in an ordinary reasonable person" since Defendant had previously known of the affair. Even more, it would be difficult to argue "there was not a reasonable amount of time for a reasonable person to cool off," "a reasonable person would not have cooled off before committing the act that caused death," and that he acted out of a "blind and unreasoning fury." Defendant specifically testified that he did not take a direct

48

route to the victim's house at all because he recognized he was upset and did not want to proceed to the victim's house in a rage. Detective Sullivan estimated a direct route would have taken thirty minutes, so it is clear it would have taken Defendant much longer if he "drove around town" and made stops on the way to the victim's house, giving a reasonable person sufficient time to cool off. Accordingly, this Court finds Defendant is not entitled to relief on this ground.

Response Ex. 31 at 22–24 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1–2, 19.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this subclaim.

### F. Ground Six

As Ground Six, Franklin alleges the trial court erred in denying grounds one, seven, and fourteen of his amended Rule 3.850 motion. Petition at 17–19.

*(1) Ground One of Rule 3.850 Motion*

Franklin alleges counsel was ineffective for failing to effectively cross-examine Detective Sullivan. Petition at 18. At trial, Detective Sullivan testified about the proper policy and procedure once they are informed that a defendant has physical injuries. Id. Franklin alleges counsel failed to cross-examine Detective Sullivan on whether he followed those procedures when Franklin was arrested and had injuries. Id. He maintains that he had defensive wounds from the baseball bat and the jury was left uninformed of the "true circumstances of the events." Id.

Franklin raised a substantially similar claim within ground one of his amended Rule 3.850 motion. Response Ex. 26 at 5–7. The trial court denied the claim, stating:

> At trial, the detective who spoke to Defendant that night testified he saw no injuries to Defendant, or he would have notified the medical staff and had photographs taken. Moreover, no blood or DNA was found on the metal baseball bat Defendant alleges the victim used to strike him. Defendant agreed the police took no pictures of him, but stated that he did have injuries of lumps on his head from where the victim allegedly hit him with the bat and that he told police about those injuries.
>
> Even if his booking photographs showed lumps on Defendant's head, this Court finds no reasonable probability the result of the proceeding would have been different. This is particularly true based on the evidence of premeditation presented by the State. The State presented evidence that Defendant had tried to stop the affair between the victim and Defendant's wife before, by confronting and fighting the victim, slashing the victim's tires, and reporting the affair to a supervisor at the victim and Defendant's

50

> wife's workplace, but those methods failed. Additionally, when Defendant found out the affair was ongoing, he loaded his gun, drove around town for awhile while planning to go to the victim's home, and then shot him. There was evidence Defendant shot the victim in the back of the head and shot him while he stood over the victim lying on the ground, including Defendant's own admission that he shot the victim but did not remember how. Accordingly, Defendant's first ground is without merit.

Response Ex. 31 at 2−3 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1−2, 19.

While the trial court did not discuss Franklin's specific argument that trial counsel failed to cross-examine Detective Sullivan about procedures in its order, Franklin did raise this issue within his Rule 3.50 motion. If the First DCA considered and decided this issue on the merits despite the omission from the trial court's order, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

To the extent that the First DCA did not consider this claim, the Court finds Franklin is still not entitled to relief. The evidence here supports the jury's verdict that Franklin did not act in self-defense, but instead went to the victim's home to confront him with a deadly weapon. Injuries he may have sustained would not refute the circumstances surrounding the offense. And testimony about whether law enforcement followed certain procedures also would not refute the evidence that Franklin obtained a firearm and ammunition, drove more than twenty minutes, and confronted the victim on the victim's property. It also would not refute the evidence that Franklin shot the victim in the back of the head and shot the victim while the victim was lying on the ground. Response Exs. 11 at 43, 57–58; 12 at 99.

As for the defense strategy, Detective Sullivan testified that Franklin had no injuries. Response Ex. 12 at 32–33. On cross-examination, trial counsel chose to highlight that law enforcement had no documentation to support the testimony that Franklin had no injuries upon his arrival in custody. Id. at 51. The Court finds trial counsel cannot be held ineffective for failing to pursue the cross-examination suggested by Franklin here given the circumstances of this case. The cross-examination strategy used by trial counsel supported the defense theory and was reasonable. For these reasons, relief on this subclaim is due to be denied.

*(2) Ground Seven of Rule 3.850 Motion*

Franklin maintains trial counsel was ineffective for allowing tainted evidence to be introduced at trial. Petition at 18. He contends the bat recovered from the crime scene was not properly tested and law enforcement exhibited misconduct in the collection and handling of the evidence. Id. He further laments that the state insinuated to the jury that his DNA should be on the bat if he was struck with it. Id.

Franklin raised a substantially similar claim in ground seven of his amended Rule 3.850 motion. Response Ex. 26 at 21−24. The trial court denied the claim, stating:

> The crime scene detective who processed the scene of the shooting, Detective Andrew F. Kipple, testified that a bat was found near the victim. Detective Kipple testified that he did not swab or test the bat, but collected it and preserved it for potential testing by Florida Department of Law Enforcement ("FDLE"). On cross-examination, defense counsel made sure to highlight that the detective did not swab it, test it for fingerprints, or use luminol to determine the presence of blood. The bat was submitted to FDLE for analysis, but a visual search as well as luminol testing revealed no presence of blood. FDLE also swabbed the bat for DNA, but no DNA results were found. In her closing argument, counsel specifically used this testimony to discredit any FDLE results and the State's arguments regarding no DNA being found on the bat by stating the detective failed to test the bat that night and that no DNA was found on any evidence submitted in this case. Thus, it is clear from the record that counsel was familiar with the crime scene evidence and the limitations of that evidence, using the facts to Defendant's advantage. Accordingly, this Court finds counsel was not deficient in this regard and Defendant is not entitled to relief on this ground.

Response Ex. 31 at 14 (record citations omitted). The First DCA per curiam

53

affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1–2, 19.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this subclaim.

Regardless, even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit. Franklin acknowledges in his Petition that trial counsel did highlight for the jury law enforcement's alleged negligence in collecting and handling of the evidence, but argues that this does not change the fact that the state ultimately used tainted evidence. Petition at 18. Trial counsel employed a reasonable strategy in challenging the state's evidence here. Because that strategy was ultimately unsuccessful does not render that strategy ineffective. Trial counsel cross-examined Detective Kipple on his evidence collection to bring attention to the deficiencies, and in turn, used that testimony to discredit any subsequent FDLE test results and

the state's arguments regarding no DNA being found on the bat. Response Exs. 11 at 129–30; 13 at 86–87. Thus, the record shows trial counsel did address the allegedly tainted evidence at trial. Although the Court, in hindsight, could speculate that a different strategy may have been more effective, counsel's decision to cross-examine Detective Kipple and use his testimony to cast doubt on the state's evidence is not deficient simply because it failed to convince the jury. See Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential . . . [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . ."). As such, relief on the subclaim presented here is due to be denied.

### (3) Ground Fourteen of Rule 3.850 Motion

Franklin next alleges trial counsel was ineffective for allowing tainted evidence to be introduced to the jury. Petition at 18. He alleges trial counsel did not challenge the state's misconduct in failing to collect all evidence from his wife's cell phone. Id. And, as a result, he was denied an opportunity to view all of the applicable evidence in his case. Id.

Franklin raised a substantially similar claim in ground fourteen of his amended Rule 3.850 motion. Response Ex. 26 at 35–36. The trial court denied the claim, stating:

On January 14, 2019, this Court granted Defendant leave to

55

amend his original motion to render his motion, and all the grounds within it, sufficient for review. This Court finds this claim is insufficiently pled. Defendant does not explain what he believes were in the additional text messages not shown by the State or procured by counsel and how these text messages would have changed the outcome of the proceeding. Defendant simply alleges counsel's failure to procure all the text messages, and asserts the outcome of the trial would have been different. In Defendant's Original Motion, Defendant stated that "if [it] is true that Mrs. Franklin might have been texting [the victim], it would have shown beyond a reasonable doubt that [the victim] was the true aggressor." However, this Court finds such allegation is also conclusory because Defendant does not explain what the text messages would be or how they would show the victim to be the aggressor. Such mere conclusory allegations are insufficient to warrant relief. See Freeman v. State, 761 So. 2d 1055. 1061 (Fla. 2000)("The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden."); Jones v. State, 998 So. 2d 573, 584 (Fla. 2003). Moreover, as Defendant's allegations are sprinkled with uncertainty of what the text messages would contain, if anything, the allegations here are based on speculation that cannot warrant relief. See Maharaj, 778 So. 2d at 951. To the extent to which Defendant alleges that his wife's text messages would show that the victim had been warned Defendant was coming over, or that the victim intended to attack Defendant, those claims are disposed of in this Court's analysis of Grounds Two and Three, above.

In Defendant's Original Motion, he also alleged counsel was ineffective for failing to obtain all of the victim's text messages. However, this allegation is not raised in the Amended Motion. Thus, Defendant either intended to withdraw the claim or it remains insufficiently pled; either way, it cannot be the basis for relief. Because this Court already granted Defendant leave to amend and this claim remains insufficiently pled, this Court finds it is subject to summary denial. See Fla. R. Crim. P. 3.850 (f)(3); Spera, 971 So. 2d at 761. Accordingly, this ground is without merit.

Response Ex. 31 at 24–25 (record citations omitted). The First DCA per

56

curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1–2, 19.

Contrary to Respondents' arguments here, the trial court's ruling that this claim is insufficiently pled is not an independent and adequate state ground that precludes federal review. See Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1286 (11th Cir. 2012) ("[J]ust as under our federal procedural rules, a Florida state court's dismissal of a post-conviction claim for facial insufficiency constitutes—at least for purposes of the procedural default analysis—a ruling 'on the merits' that is not barred from our review."). Franklin's claim is not barred from federal habeas review. See Owen v. Sec'y for Dep't of Corr., 568 F.3d 894, 913 (11th Cir. 2009).

Thus, the Court applies deference to the state court's adjudication. And in doing so, the Court applies deference to the state court's finding that Franklin's ineffective assistance of counsel claim was vague, conclusory, and speculative. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Indeed, the Court sees nothing in the trial court's order—which

the First DCA affirmed—that violates <u>Strickland</u>. Thus, habeas relief is not warranted on this subclaim.

### G. Ground Seven

As Ground Seven, Franklin alleges the trial court erred in denying grounds two, five, and twelve of his amended Rule 3.850 motion. Petition at 19–21. As the basis for these grounds, Franklin alleges trial counsel was ineffective by not being prepared for trial in the following ways. Each is addressed in turn.

#### *(1) Ground Two of Rule 3.850 Motion*

Franklin maintains trial counsel failed to present testimony from his brother, Scott Franklin, at trial. Petition at 20. Franklin maintains Scott Franklin had firsthand knowledge of the "emotional devastation" he was experiencing. <u>Id.</u> Scott Franklin also knew about prior events and circumstances of what occurred between Franklin, Burnell, and the victim, which Franklin maintains would show the intent was not premeditation to murder the victim. <u>Id.</u> Franklin further alleges that Scott Franklin spoke to the victim and knew the victim had plans to attack Franklin on the night of the murder. <u>Id.</u>

Franklin raised a substantially similar claim as ground two in his amended Rule 3.850 motion. Response Ex. 26 at 8–9. The trial court denied the claim, stating:

Defendant maintains counsel acted deficiently by failing to call Defendant's brother, Scott Franklin ("Franklin"). Defendant suggests Franklin would have testified that he called the victim to tell him Defendant was coming to confront him and advised the victim to call the police and stay inside, but that the victim responded with his intent to "combat[] the armed Defendant." Defendant avers this testimony would have shown the victim's intent to attack Defendant and would have rebutted the State's theory of premeditation by Defendant.

However, even assuming arguendo that counsel had called Scott Franklin to testify that he specifically told the victim Defendant was headed to the victim's home and the victim's reaction thereto, there is no reasonable probability the result of the proceeding would have been different. This is especially true considering the evidence of premeditation as outlined in Ground One. Moreover, evidence was presented that the victim came out to meet Defendant armed with a metal baseball bat, showing his intent to meet Defendant outside armed. Defendant's wife testified that after Defendant left the residence that night, she called the victim to let him know Defendant had seen the text messages between them and was mad about them. Therefore, there was evidence presented at trial that the victim at least knew Defendant was angry about his affair with Defendant's wife before Defendant arrived at his house that night. In closing, defense counsel argued that the victim knew Defendant had found out about the text messages, as shown by Defendant's wife's testimony that she informed the victim of that fact, so the victim was waiting for the Defendant. However, despite this evidence and argument, the jury still did not find Defendant acted in self-defense or was justified in doing so. This Court, thus, finds Defendant is not entitled to relief on this ground.

Response Ex. 31 at 4 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1−2, 19.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this subclaim.

Even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit. Complaints about uncalled witnesses are not favored, because the presentation of testimony involves trial strategy and "allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). Indeed, counsel's decision on which witnesses to call "is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." Rhode v. Hall, 582 F.3d 1273, 1284 (11th Cir. 2009).

Here, Franklin has not established that no competent lawyer would have chosen not to call the witness. The court record shows Scott Franklin was a Category A witness and that counsel took his deposition. Franklin, No. 16-2013-CF-7224-AXXX-MA, (Docs. 41; 96; 400 at 29−30). There are many reasons to decline to call this witness, including the fact that the state could attack his credibility as biased based on the fact he is Franklin's brother.

Notably, refusing to call a witness is the kind of tactical decision that lawyers make, and based on the record here, it was not so egregious that no competent lawyer would make the same decision.

As to the second prong of the <u>Strickland</u> test, to prove prejudice, Franklin must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. It is not enough for him to show that the error had some conceivable effect on the outcome of the proceeding. <u>Id.</u> at 693. And, courts must consider the totality of the evidence before the jury in making the prejudice determination. <u>Id.</u> at 695. "The likelihood of a different result must be substantial, not just conceivable." <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1327 (11th Cir. 2013) (citation omitted).

Franklin has failed to satisfy his burden on the prejudice prong. Even if Scott Franklin testified about what he told the victim, the Court finds the outcome of these proceedings would not have been different. There was evidence at trial that the victim came out to meet Franklin armed with a metal baseball bat. Response Exs. 11 at 59; 12 at 165−66. Burnell testified that after Franklin left the residence that night, she called the victim to let him know Franklin had seen the text messages between them. Response Ex. 11 at 188−89. Thus, the jury heard evidence that the victim knew Franklin was upset about his affair

with Burnell. And, the victim's neighbor—upon discovering the body—saw the baseball bat on the ground nearby. Id. at 59.

Yet the state presented evidence that Franklin had tried to stop the affair between the victim and Burnell in the months leading up to the murder, by confronting and fighting the victim, slashing the victim's tires, and reporting the affair to a supervisor at the victim's workplace. Response Exs. 11 at 155−56; 12 at 188. The jury further heard that when Franklin found out the affair was ongoing, he armed himself, loaded the gun, and drove around town while planning to go to the victim's home. Response Exs. 11 at 156−59; 12 at 158−59, 161−63. The state presented evidence that Franklin shot the victim in the back of the head and shot him while he stood over the victim lying on the ground. Response Exs. 11 at 44, 57−58; 12 at 99. Testimony from Scott Franklin that the victim knew Franklin was coming and was prepared to fight him does not shake the Court's confidence in the outcome of these proceedings given the evidence and testimony presented to the jury.

For these reasons, relief on this subclaim is due to be denied.

### (2) Ground Five of Rule 3.850 Motion

Franklin maintains the state committed a discovery violation by listing the victim's wife, Kelly Gonzalez, as a Category B witness instead of a Category A witness. Petition at 20. By doing so, Franklin alleges he was deprived of an opportunity to depose the witness. Id. He maintains trial counsel's failure to

investigate Gonzalez as a potential witness was deficient because she had firsthand knowledge of prior events and was in the home moments before the victim exited to meet Franklin in the yard. Id. at 20–21. Franklin further alleges Gonzalez tampered with evidence by moving the victim's body, removing items from his pockets, and going through the victim's phone. Id. at 21.

Franklin raised a substantially similar claim as ground five in his amended Rule 3.850 motion. Response Ex. 26 at 15–17. The trial court denied the claim, stating:

> At the beginning of jury selection, Defendant told the trial judge that he had wanted to depose the victim's wife, but that "they" did not want Defendant to do so. The State mentioned that she was listed by the State, but only as a Category B witness as she did not witness the shooting and could not provide any information about what happened outside of the home. Defendant, however, argued that "[s]he kn[e]w what happened before . . . and what might have lead up" to the incident.
>
> Florida Rule of Criminal Procedure 3.220(h)(l)(B) states that "[n]o party may take the deposition of a witness listed by the prosecutor as a Category B witness except upon leave of court with good cause shown." Category A witnesses include:
>
>> (1) eye witnesses, (2) alibi witnesses and rebuttal to alibi witnesses, (3) witnesses who were present when a recorded or unrecorded statement was taken from or made by a defendant or codefendant, which shall be separately identified within this category, (4) investigating officers, (5) witnesses known by the prosecutor to have any material information that tends to negate the guilt of the defendant as to any offense charged, (6) child

hearsay witnesses, (7) expert witnesses who have not provided a written report and a curriculum vitae or who are going to testify, and (8) informant witnesses.

Fla. R. Crim. P. 3.220(b)(l)(A)(i).  As the prosecutor stated on the record that the victim's wife was not a witness to the shooting and could not provide information about what occurred outside the home, the witness was not one "known by the prosecutor to have any material information that tend[ed] to negate the guilt of the defendant" and did not meet any other category to be considered Category A.  Accordingly, counsel would have been required to show good cause to be entitled to depose this witness.

Testimony regarding the victim's affair with another woman would likely be found irrelevant and prejudicial and, therefore, inadmissible.  It is unclear how the victim's wife would have first-hand knowledge that the victim covered up Defendant's bite mark as a muffler burn or that Defendant was the one to slash the victim's tires if the wife did not know of Defendant, or the victim's affair with Defendant's wife, until after the victim's death. Additionally, it was clear from the evidence presented at trial that the victim's wife was unaware of the affair despite the fight and slashing of the victim's tires.  Similarly, it is difficult to see how the victim's wife would have known about the calls from Defendant's wife or brother because the victim had two cell phones, one of which was in part to conceal his affair with Defendant's wife from the victim's wife.  Moreover, Defendant's wife testified at trial that she called the victim to tell him Defendant found the text messages and was mad.  Thus, that matter was already presented and did not require further evidence.

As for whether the victim's wife "tampered with the crime scene" and removed the victim's phone from his pocket, there was testimony presented at trial that the victim's body was moved before police arrived.  Whether the victim's wife removed the victim's phone is of no relevance.

Defendant also suggests the victim's wife would have been able to testify that the victim had Borderline Personality Disorder, engaged in cutting his body, and that she had witnessed the

victim's "aggressive and spontaneous behavior patterns." This evidence, the existence of which is based on Defendant's speculation, would only have become relevant to Defendant's case and self-defense theory if he was able to show that he knew of this information before the time of the shooting and it contributed to his fear of the victim, which Defendant does not suggest was the case. See Hedges v. State, 667 So. 2d 420, 422 (Fla. 1st DCA 1996) ("To prove the victim's dangerous character, evidence either of the victim's reputation for violence or specific prior acts of violence is admissible, when the defendant knew of the victim's violent acts or of his violent reputation at the time of the alleged offense." (emphasis added)). Moreover, the victim's diagnosis and cutting of his body would likely be inadmissible under 90.403 due to limited relevancy and high risk of prejudice. Based on the above, this Court finds it unlikely that the Court would have granted a request to depose this witness and that even if the witness had been deposed and called at trial, this Court finds there is no reasonable probability the result of the proceeding would have been different. Defendant is, therefore, not entitled to relief on this ground.

Response Ex. 31 at 10−12 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1−2, 19.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence

presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

That said, even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit. Most of the testimony Franklin alleges Gonzalez would give about the affair and phone calls is entirely speculative. Campbell v. Sec'y, Fla. Dep't of Corr., No. 2:19-cv-334-JES-NPM, 2022 WL 1321144, at *6 (M.D. Fla. May 3, 2022), certificate of appealability denied, No. 22-11904-J, 2023 WL 3862150 (11th Cir. Feb. 17, 2023) ("Mere speculation that favorable evidence may exist is insufficient to show either deficient performance or prejudice"). Moreover, the record establishes that Gonzalez did not have knowledge of the affair. Further, she did not have direct knowledge of what the victim did leading up to the August 1, 2013 altercation with Franklin. At the sentencing hearing, the state read a statement from Gonzalez, in which she stated she went to bed at 10:00 p.m. and did not get out of bed until right before the gunshots rang out at 11:00 p.m. Franklin, No. 16-2013-CF-7224-AXXX-MA, (Doc. 386 at 19). There was also testimony from a neighbor that upon discovering the victim's body, Gonzalez became upset and went to hold the body, thereby moving it from its original position. Response Ex. 11 at 58. Thus, the jury heard that Gonzalez moved the body.

Even if counsel had deposed this witness, her statements during sentencing are indicative of what she would have said in a deposition. And it is evident that she would not have provided the testimony Franklin now contends she would have given. Also, to the extent Franklin alleges prosecutorial misconduct or a discovery violation for the state failing to list Gonzalez as a Category A witness, her statements at sentencing establish that she did not meet the criteria for being a Category A witness. See Fla. R. Crim. P. 3.220(b)(l)(A)(i). As such, the state did not engage in misconduct by listing her as a Category B witness.

Because Franklin's allegations are based on speculation and contradicted by the record, he is not entitled to the relief he seeks in this subclaim.

### (3) Ground Twelve of Rule 3.850 Motion

In this claim, Franklin alleges trial counsel was ineffective for failing to order the deposition transcript of McGreevy. Petition at 19. Franklin alleges trial counsel called Detective Green "on the fly" to fix her error in failing to impeach McGreevy with her own deposition testimony. Id. Franklin further alleges the state took "full advantage of counsel's poor performance" by admitting evidence at trial that McGreevy saw him shoot the victim in the back of the head when there was no such testimony. Id.

Franklin raised a substantially similar claim as ground twelve in his amended Rule 3.850 motion. Response Ex. 26 at 31–34. The trial court denied the claim, stating:

> At trial, McGreevy testified that she saw flashes occurring near a house and could see a person but could not see a person's face. McGreevy continued to say she saw two people, one standing over another on the ground.  Counsel objected to this testimony, believing McGreevy never mentioned seeing a person in her deposition.  At sidebar, however, the State presented McGreevy's deposition in which she said, "I could see someone laying down and someone firing the shots. I could see the sparks, or whatever you call it." Thus, it was clear from her deposition testimony that she indeed saw two people, and saw the flashes coming from one person as he shot the person lying on the ground. Accordingly, this Court finds any alleged impeachment from the deposition would have been inadmissible because it was not inconsistent. Defendant fails to show prejudice because, even to the extent anything was inconsistent, the witness' pretrial statements would not have affected the outcome of the trial.
>
> Additionally, counsel indeed called Detective Derrick Green to impeach McGreevy. Detective Green testified McGreevy told him she saw flashes coming from the direction of the Gonzalez residence, but did not say the flashes were low or that she could see someone lying on the ground or an arm aiming down at the person on the ground. Counsel highlighted this testimony during closing to discredit McGreevy's testimony.  Accordingly, this Court finds counsel was not deficient in her impeachment of McGreevy and used the means available to her to show inconsistency.  This Court further reiterates that any impeachment from the deposition would have been minimal and would not have changed the outcome of the proceeding. This Court, therefore, finds this ground to be without merit.

Response Ex. 31 at 21–22 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response

Ex. 37 at 1–2, 19.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

Regardless, even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit. Trial counsel was not ineffective for failing to order copies of the deposition transcript. As she stated at trial, she took notes at the deposition with McGreevy. Response Ex. 11 at 42. The Court cannot say counsel's strategic decision to take notes instead of ordering the transcript was unreasonable. Floyd v. State, 257 So. 3d 1148, 1154 (Fla. 1st DCA 2018) (finding counsel was not ineffective for failing to make deposition transcripts available to defendant who went pro se before trial; counsel determined she did not need the transcripts and did not order them); see generally Dismuke v. State, 388 So. 2d 1324, 1325 (Fla. 5th DCA 1980) (affirming trial court order that found "[t]he fact that defense counsel chose to

interview witnesses as opposed to taking formal depositions was a matter of trial strategy and in no way constitutes ineffective counsel.").

As to her introduction of Detective Green's testimony, Detective Green spoke to McGreevy around 2:00 a.m., shortly after she witnessed the 11:00 p.m. murder. Response Ex. 12 at 136. Detective Green's notes of this interaction with McGreevy—recorded within hours of the murder—was what he testified to at trial. Id. Whereas McGreevy gave her deposition much later. Trial counsel's decision to introduce the testimony of Detective Green who had recorded what McGreevy said when the events were fresh in her mind is, again, the epitome of a strategic decision. Rhode, 582 F.3d at 1284.

Moreover, as to Franklin's challenge to the state's comment it made in response to Franklin's judgment of acquittal, that comment was not improper. McGreevy testified that she saw someone laying down and someone firing shots. Response Ex. 11 at 44–45. The medical examiner testified that the victim was shot in the head from behind. Response Ex. 12 at 99. Thus, the state's argument that McGreevy saw Franklin shoot the victim in the back of the head is a reasonable interpretation of the evidence the state presented during its case in chief. And contrary to Franklin's claim, the state did not present this statement as evidence, but rather as argument in response to Franklin's motion for judgment of acquittal. Response Ex. 12 at 116.

For these reasons, relief on this claim is due to be denied.

## H. Ground Eight

As Ground Eight, Franklin alleges the trial court erred when it found counsel was not ineffective for refusing to cross-examine a minor witness, V.F., on her alleged change in testimony. Petition at 21. Franklin argues that V.F. changed the word "killed" to "murder" in her trial testimony and, because trial counsel did not cross-examine her on this change, the jury was unable to accurately weigh her testimony as a result. Id. at 21. As Franklin contends, this change in language could mean the difference between premeditated first-degree murder, second-degree murder, or self-defense. Id. In addition, Franklin argues that the state used this allegedly false testimony from V.F. to claim that he admitted guilt. Id. at 22. He further argues that the state improperly inflamed the jury by yelling loudly and pointing at Franklin, saying he murdered the victim. Id. And that counsel did not object to this. Id. Franklin lastly alleges counsel was ineffective for conceding his guilt without his consent. Id.

Franklin raised a substantially similar claim in ground six of his amended Rule 3.850 motion. Response Ex. 26 at 18−21. The trial court denied the claim, stating:

> This Court notes that the entirety of Defendant's daughter's testimony at trial was very brief Moreover, the contested comment that Defendant told her he "murdered somebody" was mentioned only once in a brief manner.  Initially, this Court notes that the daughter's previous statement that Defendant admitted to killing

someone is not inconsistent with saying that he admitted to murdering someone and would likely not have been admissible impeachment evidence. Moreover, this Court finds there is no reasonable probability this small difference in verbiage would have affected the outcome of the trial. This is particularly true based on the testimony of the Defendant's then-wife who also testified Defendant admitted to shooting and killing the victim when he returned home. In closing argument, defense counsel, addressing Defendant's statement to his daughter that he murdered someone, pointed out that murder is a legal term of art, to kill, and it can be justified. This Court finds that closing argument to be a reasonable strategy and likely to be more effective than cross-examining the minor witness about legal distinctions, which may have been fruitless and would certainly have emphasized the statement rather than leaving it as a brief statement within a nearly week-long trial. Accordingly, this Court finds Defendant is not entitled to relief on this ground.

Response Ex. 31 at 12–13 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1–2, 19.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

Even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit for the reasons set forth below.

*(1) Failing to impeach V.F.*

Franklin alleges counsel should have impeached V.F. with the change in her verbiage. Petition at 21. He also alleges the trial court erred by failing to hold an evidentiary hearing on this ground. Id.

Counsel will not be found ineffective merely because a witness may have provided other testimony. Fugate v. Head, 261 F.3d 1206, 1220 (11th Cir. 2001). "The decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of a defense attorney.'" Id. at 1219. Importantly, even if counsel may have been deficient in failing to impeach a witness, the petitioner must still show prejudice resulted from the deficient cross-examination. Id. at 1220.

V.F.'s previous statement that Franklin admitted to "killing" someone is not inconsistent with saying that he admitted to "murdering" someone and would not have been proper impeachment for trial counsel. "Murder" is a legal term, and cross-examining a child witness on the distinction between the legal meaning and lay meaning of a word would have brought more attention to this brief testimony of the child. Instead, as seen in the trial record, trial counsel discussed the term in her closing argument to the jury. Response Ex. 13 at 83–84.

Even assuming <u>arguendo</u> that trial counsel was deficient for failing to impeach V.F. with the terms she used, there is no prejudice. Burnell also testified that Franklin admitted to shooting and killing the victim when he returned home. Response Ex. 11 at 161−62. And the trial court properly instructed the jury on homicide, including justifiable and excusable homicide, first-degree murder, second-degree murder, and manslaughter. Response Ex. 14. The Court is unconvinced that the terminology used by a child during her brief testimony−in light of all the other evidence presented at trial−so greatly influenced the jury as to cast doubt on the confidence of the verdict.

To the extent Franklin challenges the trial court's decision to summarily deny this claim without a hearing, such a claim is not cognizable here. <u>Carroll v. Sec'y, DOC</u>, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[I]t is 'beyond debate' that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief."). Relief on this subclaim is due to be denied.

### (2) <u>Giglio</u>[11] violation

Franklin alleges a <u>Giglio</u> claim, arguing that the state knowingly used V.F.'s allegedly false testimony to claim that he admitted guilt. Petition at 22.

---

[11] <u>Giglio v. United States</u>, 405 U.S. 150 (1972)

He argues the state coached V.F. to make false statements during her testimony. Id.

Franklin mentioned Giglio in a footnote of his amended Rule 3.850 motion. Response Ex. 26 at 19. However, the state court did not address the Giglio claim when summarily denying the Rule 3.850 motion. Regardless, Franklin is still not entitled to relief. For a Giglio claim to be successful, a petitioner must establish that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony and that the falsehood was material." Brown v. Head, 272 F.3d 1308, 1317 (11th Cir. 2001) (citations omitted). For Giglio purposes, the falsehood is deemed to be material if "there is any reasonable likelihood that the false testimony could have affected the judgment." Ferguson v. Sec'y for Dep't of Corr., 580 F.3d 1183, 1208 (11th Cir. 2009) (quotation omitted) (citation omitted).

To demonstrate willfully offered perjury, Franklin must show more than mere inconsistencies due to memory lapse, unintentional error, or oversight. Maharaj v. State, 778 So. 2d 944, 956 (Fla. 2000). Indeed, "[i]n the Giglio context, the suggestion that a statement may have been false is simply insufficient; the defendant must conclusively show that the statement was actually false." Maharaj v. Sec'y for Dep't of Corr., 432 F.3d 1292, 1313 (11th Cir. 2005).

75

The record reflects that the child witness used similar words–during her deposition and trial testimony–to explain what Franklin said to her on the night these events transpired. These semantics, at most, are the result of unintentional error or oversight on the part of the child witness. Not a knowing or intentional presentation of false testimony by the state. Franklin also fails to establish how this discrepancy in verbiage is material, as the Court is not persuaded that the witness's word choice was of such magnitude that it altered the outcome of this case. For these reasons, Franklin does not establish a <u>Giglio</u> violation and is not entitled to relief on this subclaim.

### (3) Prosecutorial Misconduct

Franklin alleges the state engaged in prosecutorial misconduct and attempted to influence the jury's emotions. Petition at 22. According to Franklin, the state took "every opportunity" to elaborate on his alleged confession to V.F., going so far as to point at Franklin and yell loudly that he murdered the victim. <u>Id.</u>

Even if the state court's denial of relief on this claim is not entitled to deference, he is still not entitled to relief. "To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." <u>United States v. Eyster</u>, 948 F.2d 1196, 1206 (11th Cir.1991). The Supreme Court has instructed that relief is warranted only if the prosecutor's comments

"so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quotation marks and citation omitted); see also Romine v. Head, 253 F.3d 1349, 1366 (11th Cir. 2001) ("[H]abeas relief is due to be granted for improper prosecutorial argument at sentencing only where there has been a violation of due process, and that occurs if, but only if, the improper argument rendered the sentencing stage trial fundamentally unfair.").

Indeed, due process is denied only "when there is a reasonable probability," or "a probability sufficient to undermine confidence in the outcome," that, but for the offending remarks, "the outcome of the proceeding would have been different." Eyster, 948 F.2d at 1206−07 (citations and internal punctuation omitted). If the misconduct fails to render the trial fundamentally unfair, habeas relief is not available. Land v. Allen, 573 F.3d 1211, 1220 (11th Cir. 2009). Courts consider "the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused," and "the strength of the competent proof to establish the guilt of the accused." Davis v. Zant, 36 F.3d 1538, 1546 (11th Cir. 1994). Thus, where the evidence of guilt is overwhelming, an improper comment by a prosecutor usually does not render the trial fundamentally unfair in violation of the Constitution. See Land, 573 F.3d at 1220.

Here, Franklin has failed to show that the prosecutor's actions were even remotely enough to render Franklin's trial fundamentally unfair. The statement was an isolated comment during the state's closing argument. Given the overwhelming evidence of guilt, this comment, even if improper, did not render the trial fundamentally unfair. For these reasons, the requested relief in this claim is due to be denied.

### (4) Conceding Guilt

Franklin alleges the trial court failed to address his claim that counsel was ineffective for conceding his guilt at trial without his consent. Petition at 22. Specifically, Franklin maintains trial counsel was ineffective for stating that Franklin admitted to V.F. that he murdered the victim. Id.

While the trial court did not specifically discuss counsel's concession of Franklin's guilt in its order, Franklin did raise this issue within his Rule 3.850 motion. If the First DCA considered and decided this issue on the merits despite the omission from the trial court's order, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the

state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

To the extent that the First DCA did not consider this claim, the Court finds Franklin is still not entitled to relief. During closing argument, trial counsel summarized the defense theory of the case. Response Ex. 13 at 71−89. She painted a detailed picture of what happened from Franklin's perspective in the months leading up to the offense and right after. Id. Franklin now takes issue with trial counsel's statements during closing argument. Trial counsel stated,

> The State has argued that Mr. Franklin went home and he said to his daughter, I murdered somebody, I'm going to jail for a long time. Well, that's true, he did, he did say that, and that's what happened.

Id. at 82. But Franklin presented a theory of self-defense at trial. Response Ex. 11 at 30−34. Because the very nature of this defense required Franklin to admit to the commission of the criminal act, trial counsel was not deficient for acknowledging to the jury that Franklin killed the victim. See Martinez v. State, 981 So. 2d 449, 453 (Fla. 2008) ("[W]hen a defendant asserts a claim of self-defense, he admits the commission of the criminal act with which he was charged but contends that the act was justifiable."). By presenting this theory, trial counsel was not admitting an intent to kill, but rather admitting that the killing occurred for a justifiable reason.

Importantly, contrary to his allegations here, Franklin's own testimony at trial demonstrates he supported the theory presented to the jury. Franklin testified he did not intend to kill the victim. Response Ex. 12 at 178. Rather, he explained he went to confront the victim about the affair, and when the victim attacked him with a bat, he discharged the firearm out of fear. Id. at 163−169. Given this testimony, it is clear Franklin agreed to a theory of self-defense and it was not error for trial counsel to admit during closing argument that Franklin killed the victim. See Dill v. Allen, 488 F.3d 1344, 1357 (11th Cir. 2007) ("In light of the reasonableness standard set forth by the Strickland Court, our circuit maintains that constitutionally sufficient assistance of counsel does not require presenting an alternative-not to mention unavailing or inconsistent-theory of the case."); see Williamson, 221 F.3d at 1180 (finding no ineffective assistance of counsel where a reasonable attorney could have deemed an alternative theory "inconsistent with Petitioner's own description of the killing"). Franklin is therefore not entitled to relief.

## I.  Ground Nine

As Ground Nine, Franklin alleges the trial court erred when it denied his claim of a double jeopardy violation. Petition at 22−23. Franklin contends that he was illegally charged and convicted of section 775.087, Florida's 10-20-life statute, because there was no underlying felony to enhance as he was already charged with a capital felony. Id. at 22. As to his double jeopardy claim,

Franklin's argument is twofold. First, he raises a double jeopardy violation that he was convicted of the murder of the victim twice—once for the premeditated design and again by use of the firearm. Id. Second, Franklin alleges he was sentenced twice for the offense because he received a life sentence and a twenty-five-year minimum mandatory. Id. at 23.

Franklin raised a substantially similar claim in ground fifteen of his amended Rule 3.850 motion. Response Ex. 26 at 36–38. The trial court denied the claim, stating:

> Defendant's offense is enumerated under section 782.04(1)(a), which provides that the crime is a capital felony, without needing to be enhanced to such a classification through any other means. Section 775.087(2)(a)(3) provides an additional enhancement to certain crimes when the perpetrator uses a firearm during the commission of that offense and causes death or great bodily harm. It is clear that section 775.087's enhancement is in addition to any other penalty, by the legislature's stated intent that "offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms . . . be punished to the fullest extent of the law . . ." §775.087(2)(d), Fla. Stat. This Court finds Defendant's sentence is not illegal in this regard and does not violate double jeopardy. Moreover, as this Court finds no error with the interplay of the statutes, this Court finds counsel cannot be deemed deficient for failing to bring this to the trial court's attention. Accordingly, Defendant is not entitled to relief on this ground.

Response Ex. 31 at 26 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1–2, 19.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

That said, even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit. The Supreme Court has explained that the Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Brown v. Ohio, 432 U.S. 161, 164 (1977). The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Id. (citation omitted).

In the Indictment the state charged Franklin with a violation of section 782.04–first-degree murder–and charged a sentencing enhancement under section 775.087–possession or use of a weapon. Contrary to Franklin's

contention, he did not receive two sentences for the same offense. Instead, the trial court imposed the only available sentence for first-degree murder, which was life imprisonment. The minimum mandatory imposed came from the enhancement for the use of a firearm. The trial court's actions were permissible as the relevant statutory authority allowed for this sentence. <u>Hatten</u>, 203 So. 3d at 146; <u>Mendenhall</u>, 48 So. 3d at 750.

As for the second double jeopardy claim, that adjudicating him guilty based on premeditation and the use of the firearm violates the Double Jeopardy Clause, this claim is unexhausted. In his underlying Rule 3.850 motion, Franklin did not challenge the premeditation and the use of a firearm as double jeopardy violations. As such, he deprived the state court of a meaningful opportunity to review the claim. Therefore, the Court finds this claim unexhausted and procedurally defaulted. Franklin has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Therefore, relief on this claim is due to be denied.

Nevertheless, even if Franklin's claim is not procedurally barred, he is still not entitled to relief. Again, Franklin's claim does not rise to a double jeopardy violation. He was charged with one count of premeditated first-degree murder and the jury returned a verdict of guilty on that count. The jury also made a separate finding that he actually possessed and discharged a firearm

during the murder, qualifying him for the firearm enhancement charged by the state. This does not run afoul of double jeopardy principles.

For these reasons, the relief Franklin seeks in this claim of Ground Nine is due to be denied.

### J. Ground Ten

As Ground Ten, Franklin maintains the trial court erred in denying his claim of a <u>Brady</u> violation. Petition at 23–24. He alleges that he requested text message data from the victim's cell phone, but the state argued it could not download this information from the Metro PCS cell phone. <u>Id.</u> Franklin alleges that he learned after trial that the state disclosed some of this information to trial counsel a few days before trial, preventing trial counsel from having adequate time to incorporate this information into her strategy. <u>Id.</u>

Franklin raised a substantially similar claim in ground three of his amended Rule 3.850 motion. Response Ex. 26 at 10–12. The trial court denied the claim, stating:

> To establish a <u>Brady</u> claim, Defendant must show: (1) the evidence was favorable to him for exculpatory or impeachment purposes; (2) the State willfully or inadvertently suppressed the evidence; and (3) Defendant was prejudiced by the suppression. <u>Taylor v. State</u>, 848 So. 2d 410, 412 (Fla. 1st DCA 2003). "There is no <u>Brady</u> violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence." <u>Freeman v. State</u>, 761 So. 2d 1055, 1062 (Fla. 2000) (quoting <u>Provenzano v. State</u>, 616 So. 2d 428, 430 (Fla. 1993)). The materiality of the suppressed evidence must not be speculative.

> In order to be entitled to relief on a <u>Brady</u> claim, the defendant must also show that the evidence "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Gorham v. State</u>, 521 So. 2d 1067, 1069 (Fla.1988). . . . The mere possibility that undisclosed items of information may have been helpful to the defense in its own investigation does not establish constitutional materiality.

<u>Wright v. State</u>, 857 So. 2d 861, 870 (Fla. 2003). It must be noted that the exculpatory character of both the photographs and text messages is purely speculative and therefore cannot entitle Defendant to relief. <u>See</u> <u>Maharaj v. State</u>, 778 So. 2d 944, 951 (Fla. 2000) ("Postconviction relief cannot be based on speculation or possibility.").

In addition, courts have instructed on admissibility of evidence of a victim's reputation and conduct when a defendant claims self-defense:

> There is, to be sure, "a distinction between reputation evidence and evidence of specific acts admitted under section 90.404(1)(b)." <u>Grace v. State</u>, 832 So. 2d 224, 226 (Fla. 2d DCA 2002). "While reputation evidence may be offered to corroborate the defendant's testimony by showing the victim's propensity toward violence, specific act evidence is only admissible to prove the reasonableness of the defendant's apprehension. <u>State v. Smith</u>, 573 So. 2d 306, 318 (Fla. 1990); <u>Smith v. State</u>, 606 So. 2d 641, 643 (Fla. lst DCA 1992); <u>Williams v. State</u>, 252 So. 2d 243, 246-47 (Fla. 4th DCA 1971)." <u>Grace</u>, 832 So. 2d at 226.

<u>Savage v. State</u>, 99 So. 3d 1001, 1002 (Fla. 1st DCA 2012).

> Evidence of prior specific acts of violence by the victim is admissible, <u>if known by the defendant</u>, because it is relevant "to reveal the reasonableness of the defendant's apprehension at the time of the incident." <u>Hedges v. State</u>, 667 So. 2d 420, 422 (Fla. 1st DCA

> 1996) (quoting <u>Smith</u>, 606 So. 2d at 642-43). "[S]pecific acts of aggression and violence by the victim are inadmissible to prove that the victim was the aggressor and that the defendant acted in self-defense." Ehrhardt, <u>supra</u>, § 405.3. For this category of evidence, a defendant's knowledge of a Victim's specific acts of violence is a precondition to admissibility. <u>See</u> <u>Singh v. State</u>, 36 So. 3d 848, 851 (Fla. 4th DCA 2010); <u>Shreiteh v. State</u>, 987 So. 2d 761, 763 (Fla. 4th DCA 2008).

<u>Antoine v. State</u>, 138 So. 3d 1064, 1075-76 (Fla. 4th DCA 2014).

If, as Defendant speculates, the victim's phone contained text messages showing the victim's intention to attack Defendant, that would not be reputation evidence, but evidence of a specific act of violence, albeit an act only planned, not yet carried out. Defendant avers he has seen no such text messages, and it is undisputed that he knew of no such text messages on the night of the crime. Any such text messages would be inadmissible to prove that the victim was the aggressor and, because Defendant did not know about them, would also be inadmissible to show the reasonableness of Defendant's apprehension of the victim.

Regarding the photos of the victim with cuts and scars on his torso, Defendant posits that they "show evidence of a possible 'impulsive reaction and/or aggressive personality disorder' that would have been beneficial to bolster Defendant's self-defense claim." Similar to the purported text messages, the photos would have been inadmissible at trial to show the victim's reputation for violence and, as evidence of specific acts of violence, they would have been inadmissible because Defendant did not know about them on the night of the crime. This analysis is not affected by the truth or falsity of Defendant's speculation that, given sufficient time, he could have developed expert testimony to support his self-defense theory based on the photographs. An expert could not have determined the victim's reputation for violence from the photographs, and an opinion that a person who cut himself would have a propensity for aggression or violence would be inadmissible.

> Defendant has failed to establish the materiality of either the photos or the text messages. The third ground is without merit.

Response Ex. 31 at 5–7 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1–2, 19.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

Regardless, even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit. In <u>Brady</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87, 83. But "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." <u>Kyles v. Whitley</u>, 514 U.S. 419, 436–

37 (1995). To prevail on a <u>Brady</u> claim, the defendant must establish: "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice." <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82 (1999).

<u>Brady</u>'s prejudice prong, also referred to as the "materiality prong," is met when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Kyles</u>, 514 U.S. at 433 (quotation marks omitted). A defendant cannot meet the second prong when, "prior to trial, [he] had within [his] knowledge the information by which [he] could have ascertained the alleged <u>Brady</u> material." <u>Maharaj</u>, 432 F.3d at 1315 (quotation marks omitted). In such cases where the defendant has equal access to the evidence, there is no suppression by the government and disclosure is not warranted. <u>Id.</u> at 1315 & n. 4.

Franklin's own allegations defeat his theory that the state withheld exculpatory evidence. First, through Franklin's own admission, he acknowledges trial counsel received this material during discovery. In his Rule 3.850 motion, Franklin discusses how he sought the records after trial from the Office of the Criminal Conflict Division, the agency that represented him at trial. Response Ex. 26 at 10–11. As such, his <u>Brady</u> claim essentially rests not

on the fact that the defense did not receive the evidence, but that he himself did not see it prior to trial. This does not amount to a <u>Brady</u> violation.

In his underlying Rule 3.850 motion, Franklin cites to Detective Sullivan's deposition to support his <u>Brady</u> claim. But contrary to Franklin's assertions, the Detective's deposition is not inconsistent with the statements the state made about the phone data during the hearing on this matter. Detective Sullivan testified during his deposition that they were able to do a data dump of one phone, but only viewed photographs and messages on the other. Response Ex. 27 at 127. At a hearing on this matter prior to trial, the state acknowledged that the victim had two phones.[12] <u>Franklin</u>, No. 16-2013-CF-7224-AXXX-MA, (Doc 401 at 31–34). In discovery, the state disclosed the contents from the phone from which it was able to download the contents. <u>Id.</u> From the other phone—the one that the state could not download the contents—the state turned over photographs of the text message conversations displayed on the phone screen. <u>Id.</u> The state's representations to the trial court are entirely consistent with the Detective's deposition. The state met its obligation by disclosing the information to the defense, and there is no evidence that the state withheld information or evidence in violation of <u>Brady</u>.

---

[12] The victim had an iPhone, which the state downloaded data from, and a Metro PCS phone, from which the state was unable to download data. <u>Franklin</u>, No. 16-2013-CF-7224-AXXX-MA, (Doc. 521 at 4).

And even assuming arguendo the state did not disclose certain text messages from the phone, this Brady claim fails because Franklin only speculates that the material at issue would have led to exculpatory information. See Maharaj, 432 F.3d at 1314−16 (The petitioner's Brady claim that undisclosed materials would have led him to "other evidence, which in turn may have shown that the [victims] were killed by a Colombian [drug] cartel" failed because the "highly speculative chain" was insufficient). The state court's conclusions as to the non-exculpatory nature of these items were not unreasonable applications of Brady. As the trial court pointed out, any such text messages would be inadmissible to prove that the victim was the aggressor and, because Franklin did not know about them, would also be inadmissible to show the reasonableness of his apprehension of the victim. This same logic applies to the photographs.

In sum, the record supports the state court's fact findings regarding the alleged text messages and photographs. For all of these reasons, relief on the claim in Ground Ten is due to be denied.

### K. Ground Eleven

As Ground Eleven, Franklin alleges the trial court erred in denying grounds eight, nine, and ten of his amended Rule 3.850 motion. Petition at 24−26.

*(1)* *Grounds Eight & Nine of Rule 3.850 Motion*

Franklin argues counsel was ineffective when she failed to "inform the trial court" that Florida Standard Jury Instruction 3.6(f) included no "duty to retreat language." Id. at 25. He also contends that counsel was ineffective when she failed to object to the omission of "all applicable jury instruction language [in] 3.6(f)." Response Ex. 26 at 26. Specifically, Franklin asserts the trial court should have read the following instruction:

> A person is justified in using or threatening to use force, except deadly force against another when and to the extent the person reasonably believe[s] that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force . . . A person who uses or threatens to use force in accordance with this subsection does NOT have a duty to retreat before using or threatening to use such force.

Id. (emphasis in original).

Franklin raised a substantially similar claim in grounds eight and nine of his Rule 3.850 Motion. Response Ex. 26 at 24–27. The trial court denied the claim, stating:

> In Ground Eight, Defendant suggests counsel was ineffective for failing to advise the trial court on the necessity of an instruction that Defendant had no duty to retreat as outlined in Florida Standard Jury Instruction 3.6(f). He asserts that the instruction as read required him to prove his innocence, instead of requiring the State to prove its case. He argues that, by failing to instruct the jury that he had no duty to retreat, the instructions implied that he had such a duty. In Ground Nine, Defendant asserts counsel was ineffective for failing to object to the court's failure to read all applicable portions of 3.6(f), particularly the portion regarding no duty to retreat. Defendant asserts that, had the jury been instructed he had no duty to retreat, there is a reasonable

91

possibility the jury would have seen that Defendant was justified in using deadly force to defend himself.

The jury was instructed:

> An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which Jason Franklin is charged if the death of Edward Gonzalez [the victim] resulted from the justifiable use of deadly force.
>
> Deadly force means force likely to cause death or great bodily harm.
>
> A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another.
>
> However, the use of deadly force is not justifiable if you find Jason Franklin initially provoked the use of force against himself unless:
>
> (a)     the force asserted towards -- toward the defendant was so great that he reasonably believed that he was imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger, other than using deadly force on Edward Gonzalez, or
>
> (b)     in good faith the defendant withdrew from physical contact with Edward Gonzalez and clearly indicated to Edward Gonzalez that he wanted to withdraw and stop the use of deadly force, but Edward Gonzalez continued or resumed the use of force.
>
> In deciding whether the defendant was justified in the use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used. The danger facing the defendant need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the

defendant must have actually believed that the danger was real.

In considering the issue of self-defense, you may take into account the relative physical abilities and capacities of the defendant and Edward Gonzalez.

If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you should find the defendant not guilty.

However, if from the evidence you are convinced that the defendant was not justified in the use of deadly force, you should find him guilty if all the elements of the charge have been proved.

In his Reply concerning Ground Eight, Defendant alleges that defense counsel asked for a jury instruction that Defendant had no duty to retreat, citing section 776.012(2), Florida Statutes, and alleges it was not read even though counsel asked for it. He alleges further that his counsel, the State, and this Court "all agreed to Fla. Stat §776.012(2)." Defendant appears to confuse the Standard Jury Instructions, which refer to the statutes as authority, with the statutes themselves. At the charge conference, defense counsel did not request that the Court read from the statute, section 776.012, but from the portion of standard instruction 3.6(f) which references section 776.012.

The portion of standard instruction 3.6(f) which cites section 776.012, Florida Statutes, speaks of the circumstances under which a person is justified in using deadly force, but does not speak to any duty, or lack of duty, to retreat. 27 So. 3d at 642-43. The numbered paragraphs referred to during the charge conference are not subsections (1) and (2) of section 776.012 (which do address a duty to retreat), but paragraphs of standard instruction 3.6(f)(which do not). Therefore, Defendant is mistaken about the content of the instruction requested and agreed to at the charge conference. Counsel did not "fail[] to remind the trial court of its failing to read the jury instruction on no duty to retreat Fla, Stat. 776.012, after being agreed to and accepted by the Defense, the State, and the court itself." In fact, there was no request for, agreement to, or ruling on, an instruction other than a portion of

the instruction citing section 776.012, which instruction is silent on a duty to retreat.

The implied duty to retreat which Defendant sees in the instructions given to the jury appears in the portion addressing the law which would apply if the jury found that Defendant provoked the use of force against himself. Under those circumstances, use of deadly force is not justifiable. An exception to that rule, by which use of deadly force may be justified, requires that the Defendant exhaust every reasonable means to escape the danger. That was a correct statement of the law. § 776.041(2)(a), Fla. Stat. (2013). A duty to retreat appears in the instructions, not because of the failure of counsel to request a no-duty-to-retreat instruction (or the failure of the Court to read one that had been agreed upon), but because, after hearing argument at the charge conference, this Court ruled in favor of the State's request to read the instruction on "Aggressor," citing section 776.041, Florida Statutes.

Defendant alleges in his Reply that the State in closing argument "repeatedly emphasized" that Defendant must have exhausted every reasonable means to escape danger, other than using deadly force, which implied a duty to retreat. Actually, it was only in the context of the law applicable to defendant-as-aggressor that the State argued Defendant had a duty to retreat, and it was not unduly emphasized. The State did not argue that Defendant had a duty to retreat, or to exhaust every reasonable means of escape, except in the context of the State's theory that Defendant provoked the use of force against himself.

In his Ground Nine, Defendant purports to quote from Florida Standard Jury Instructions (Criminal) 3.6(f). He actually quotes from section 776.012(1), Florida Statutes (2014), a version of the statute which Defendant recognizes, in his Reply, does not apply to the instant case, where the crime was committed on August 1, 2013. Section 776.012(1), by its terms, applies to the use of "force, except deadly force . . ." The last sentence of subsection (1), then, applies to the use of non-deadly force: "A person who uses or threatens to use force *in accordance with this subsection* does not have a duty to retreat before using or threatening to use *such force.*" § 776.012(1), Fla. Stat. (2014) (emphasis added) There is simply no part of Standard Instruction 3.6(f), as it existed at

the time of the offense, which reads as Defendant alleges. It is undisputed that Defendant shot the victim to death with a firearm, i.e., with deadly force. On Ground Nine, then, Defendant appears to be mistaken about the applicable law.

This Court disagrees with Defendant's assessment of the trial record. Under Defendant's theory of the case, the victim "jumped" him as he came around the side of the house and immediately struck him in the head with a metal baseball bat. Defendant testified that he was "super scared," and that he stumbled backward when the victim hit him with the baseball bat. Defendant testified that he pulled the trigger, expressing the belief at trial that his first shot hit the roof of the house, then that he pulled the trigger a couple of more times, then was hit again by the victim. On cross-examination, Defendant testified that the victim hit him so hard in the head that it caused him to stumble, and that he began firing blindly. Under Defendant's version of events, with him stumbling and being hit again with the metal baseball bat, retreat would have been difficult, if not impossible. Defendant also testified that, after knocking on the front door of the victim's house with the gun at his side, he realized he might scare the victim's wife if she answered the door, so he put the gun behind his back. When asked on cross-examination, "You didn't decide to put the gun in your pocket?" he answered, "I was taught not to do it if you might - if you plan - ah, no, sir, I did not." He went on to explain, "If I was going to show him, I couldn't show him if it was in my pocket, sir, if he attacked me." The jury's verdict of guilty was more likely based on their acceptance of evidence of premeditation, and their discrediting Defendant's testimony, than on a misapprehension regarding whether Defendant had a duty to retreat. Having found the use of deadly force was premeditated, the jury could not also have found the same force to be that which "a reasonably cautious and prudent person under that same circumstances would have believed" was the only way to avoid danger. 27 So. 3d at 643. Had the jury been instructed that Defendant had no duty to retreat, and bearing in mind the other evidence of premeditation set forth in this Court's analysis of Ground One of the instant Motion, there is no reasonable likelihood that the result of the trial would have been different. Grounds Eight and Nine are without merit.

Response Ex. 31 at 14−19 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion, and on June 11, 2021, it issued the mandate. Response Ex. 37 at 1−2, 19.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

Even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim lacks merit. As the postconviction court noted in its order denying relief, Franklin appears to conflate section 776.012, Florida Statutes (2013), with Florida Standard Jury Instruction 3.6(f). The trial court read the instruction that corresponded to section 776.012. Compare Response Ex. 14 at 13 with In re Standard Jury Instructions In Crim. Cases-Rep. No. 2009-01, 27 So. 3d 640, 642 (Fla. 2010). However, the standard instruction at the time did not include the "no duty to retreat" language that the statute included. And any instruction regarding the use of nondeadly force would not

96

have applied to Franklin's case based on the evidence presented at trial. See, e.g., Mathis v. State, 973 So. 2d 1153, 1157 (Fla. 1st DCA 2006) ("When the evidence presented at trial does not establish as a matter of law whether the force used by the defendant was deadly or non-deadly, . . . the defendant is entitled to jury instructions on the justifiable use of both types of force. The only type of force that has been held to be deadly as a matter of law is the discharge of a firearm.") (internal citations omitted).

To the extent Franklin argues counsel was ineffective when she failed to object to the standard instruction or request a modified instruction, he is not entitled to relief. The postconviction court concluded that the instruction provided to the jury was consistent with Florida law. A federal habeas court is bound by a state court's interpretation of state law. See, e.g., Chamblee v. Florida, 905 F.3d 1192, 1196 (11th Cir. 2018). And, under Florida law, "[t]he standard jury instructions are presumed correct and are preferred over special instructions."[13] Stephens v. State, 787 So. 2d 747, 755 (Fla. 2001). On this record, Franklin does not establish that counsel acted outside the wide range of professionally competent assistance when she failed to object to the standard

---

[13] Notably, when the State suggested modifying a standard instruction during the charge conference, the trial court cautioned, "I should start by saying that obviously we need to stick to the standards approved and certified by the Supreme Court, and any deviation from that, any special requested changes in that generally has to be proposed in writing." Response Ex. 13 at 23.

instruction or request a modified instruction. <u>See</u> <u>Parker v. Sec'y Fla. Dep't of</u> <u>Corrs.</u>, 555 F. App'x 870, 875 (11th Cir. 2014) (per curiam) (finding petitioner failed to show counsel was deficient when he did not object to the standard jury instruction or request a modified jury instruction because the court "cannot conclude that no reasonable trial attorney would have failed to object to the standard jury instruction that had yet to be questioned, much less disparaged, by any state appellate court").

Even assuming arguendo counsel performed deficiently, Franklin can show no resulting prejudice for the reasons detailed by the postconviction court. Indeed, the record reflects overwhelming evidence that Franklin murdered the victim with premediated intent, not in self-defense. Before the shooting, Franklin found text messages between his wife and the victim, Response Ex. 11 at 158–59; he knew that they previously had an affair, Response Ex. 12 at 142–44. Franklin then left the house with a gun to confront the victim. Response Exs. 11 at 161–62; 12 at 158. A neighbor testified that she saw flashes and heard a popping noise while she unloaded her vehicle that evening. Response Ex. 11 at 36–37. She explained that when she looked in the direction of the noise, she saw one person lying on the ground and a second person with a gun standing and aiming his arm at the person on the ground. <u>Id.</u> at 44–45. The victim sustained multiple gunshot wounds, including a wound that entered the back of his head and exited through his face. Response

Ex. 12 at 96, 99–100. Considering this evidence, no reasonable probability exists that the outcome of the proceeding would have been different if the jury had received the proposed self-defense instruction. Therefore, Franklin is not entitled to federal habeas relief on these claims.

*(2) Ground Ten of Rule 3.850 Motion*

Franklin argues counsel was ineffective when she failed to "familiarize herself" with the statutory section underlying the aggressor instruction before the State requested it. Petition at 24. Franklin alleges the State requested an aggressor instruction, which provided that the use of deadly force is not justifiable if the jury found Franklin initially provoked the use of force against himself Id.; see also Response Ex. 14 at 13. According to Franklin, counsel mistakenly believed the aggressor instruction applied only if the State charged a defendant with an independent forcible felony. Response Ex. 26 at 27. Franklin appears to suggest that as a result of counsel's erroneous objection, the trial court granted the State's request for the instruction. Id. at 28. According to Franklin, the aggressor instruction eliminated his only defense because it "states [there is] a duty to retreat if you are the aggressor." Petition at 24.

Franklin raised a substantially similar claim in ground ten of his Rule 3.850 Motion. Response Ex. 26 at 27−30. The trial court denied the claim, stating:

> Under section 776.041, Defendant only had a duty to "exhaust every reasonable means to escape" if the jury found Defendant initially provoked the use or threatened use of force against himself. Thus, it was a question for the jury to decide whether that portion of the instructions would apply. Counsel, however, did indeed argue during the charge conference that this portion of the instructions not be included, but the judge included it based on the State's arguments. For these reasons, this Court does not find counsel was deficient in this regard. Counsel's alleged deficiency for her failure to ensure the jury was instructed regarding the no duty to retreat provision is addressed above and need not be addressed here. Defendant is, therefore, not entitled to relief on this ground.

Response Ex. 31 at 19 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Response Ex. 37 at 1−2, 19.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence

presented in the state court proceedings. Franklin is therefore not entitled to relief on the basis of this claim.

That said, even if the state court's adjudication of this claim is not entitled to deference, Franklin's claim is without merit. The record reflects that counsel objected to the State's request for the aggressor instruction, arguing that the trial court could give the aggressor instruction only if Franklin was charged with an independent forcible felony. Response Ex. 13 at 17, 20–21. The trial court granted the State's request, id. at 21, recognizing that Florida law authorized the aggressor instruction even if Franklin was not charged with a forcible felony, id. at 25. The trial court further explained that the State had presented sufficient evidence to warrant the instruction. Id. at 25–26.

Based on the above, even if counsel had objected to the aggressor instruction on an alternative basis, no reasonable probability exists that the trial court would have declined the State's request for the aggressor instruction. As noted by the trial court, the State presented sufficient evidence that Franklin "might have been the initial aggressor in this case." Id. at 25. And Florida law provides that it is proper for the trial court to instruct the jury as to the aggressor instruction where there is evidence in the record that the defendant may have initially provoked the use of force against himself. See Johnson v. State, 65 So. 3d 1147, 1149 (Fla. 3d DCA 2011). On this record,

Franklin fails to demonstrate prejudice. Accordingly, he is not entitled to federal habeas relief on the claims in Ground Eleven.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Franklin seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Franklin "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335−36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Franklin appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of September 2024.

MARCIA MORALES HOWARD
United States District Judge

c:     Jason Franklin  # J32257
       Counsel of record

104